## Case No. 8,442.

### LOCKE v. UNITED STATES.

[2 Cliff. 574.] [1]

Circuit Court, D. Massachusetts. Sept. Term, 1866.

New Trial—Ambiguity of Charge—No Effort to Explain — Appeal — Refusal to Give Instruction — Bill of Exceptions—When Exceptions Taken—Unlawful Importations—Invoices.

1. Courts are not inclined to grant a new trial merely on account of ambiguity in the charge to the jury, when it appears that the complaining party made no effort at the trial to have the point explained.

[Cited in Flanders v. Tweed, 16 Wall. (83 U. S.) 516; Congress & Empire Spring Co. v. Edgar, 99 U. S. 659.]

2. When goods are purchased in a foreign country, for importation into the United States, and in quantity sufficient to load several vessels, under the act of March 3, 1863 (12 Stat. 737), an invoice executed in triplicate must be produced and exhibited to the American consul at or before each shipment, and where the importation is by rail, the same rule applies to each train of one or more cars laden with the dutiable goods.

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

3. Exceptions to the charge of the presiding judge, on the ground that the language employed was ambiguous, cannot be sustained when the complaining party had made no request at the time for a clearer statement of the views of the court, when the ambiguity was not of a character calculated to mislead the jury, and was understood by the appellate court.

[Cited in Indianapolis & St. L. R. Co. v. Horst, 93 U. S. 299.]

[Cited in Sheff v. Huntington, 16 W. Va. 320.]

4. Importers cannot commingle lawful and unlawful importations in the same invoice, so that they cannot be distinguished, and be allowed to save any portion of the goods from forfeiture.

5. Refusal by the court to grant instructions as prayed is not error, unless the instructions requested were themselves correct, and needful to enable the jury rightly to perform their duty.

6. The clerk's minutes contained the statement that the claimant excepted to certain rulings of the court, and that the bill of exceptions was sealed and placed on file, but in fact none such was ever allowed; but the claimant insisted that the rulings were open to comment by him, because apparent on the record. Held, that the statement in the minutes was of no avail to the claimant in the appellate court, unless the exception was seasonably reduced to writing and embodied in a regular bill of exceptions.

7. The concluding paragraph of exceptions was, that "the court would set their seal to the bill of exceptions containing the several matters proved and given in evidence, and the rulings, rejections, and directions of the judge." No particular ruling, direction, or rejection was specified. Held, that mere objections to evidence are of no avail in an appellate court, unless it appears that the party excepted at the time. Exceptions must be taken at the time; but if seasonably taken and reserved, they may be drawn out afterward.

[Cited in Ortiz v. State (Fla.) 11 South. 614.]

8. It cannot avail the excepting party in the appellate court where the record stated that he excepted to a certain deposition, leaving it to be inferred that he objected to its admissibility, but stating no ground of objection, and the caption of the deposition not being in the case.

9. Where special objections are taken to certain parts of the testimony of a deponent, but none to the ruling of the court, they were overruled.

10. Exceptions to the admissibility of certain evidence to contradict a witness, when no foundation for the contradiction had been laid, are of no avail in the appellate court, the record not stating that the complaining party excepted at the time to the ruling of the court below in admitting the testimony.

This was a libel of information, and the case came before the court on a writ of error to the district court of the United States for this district. The libel contained six counts, the substance of which was, that certain goods, wares, and merchandise were on the 1st of May, 1864, imported from the port of Quebec in Canada into the port of Island Pond in the state of Vermont, and that the agent of the owner on the 7th of May in the same year, at the customhouse in the latter port, did knowingly make an entry of the same by means of an invoice which did not contain a true statement of all the particulars in that behalf required by the act of congress approved March 3, 1863, entitled "An act to prevent and punish frauds upon the revenue, to provide for the more certain and speedy col-

lection of claims in favor of the United States, and for other purposes." Seizure was made on land, at Portland, on the 11th of July, 1864; and on the 27th of the same month the plaintiff in error [Samuel B. Locke] appeared and made oath that he was the sole owner of the goods described in the information, pleading at the same time two pleas in answer to the entire charge, namely: First, that the goods did not, nor did any part thereof, become forfeited in the maner and form as in the information was alleged; second, that if the invoice did not in all respects conform to the requirements of the act of congress, such omissions arose from inadvertence, error, and mistake, and not from any design to defraud the United States or to evade the payment of the legal duties.

Issue was joined, and on the 19th of January, 1865, the jury returned their verdict that the goods were forfeited as alleged in the libel. Accordingly, on the 1st of March of the same year, judgment of forfeiture was entered, and the claimant sued out the writ of error. Exceptions were also filed by the claimant, to the refusal of the court to instruct the jury as requested, and to several instructions which were given to the jury.

George F. Talbot, U. S. Dist. Atty.

E. & F. Fox and Milton Andros, for defendant.

CLIFFORD, Circuit Justice. Before proceeding to consider the questions presented in the exceptions, it becomes necessary to advert to certain provisions in the act of congress upon the subject, and to the facts of the case, in order that the real nature of the controversy may be understood.

Invoices of goods imported from any foreign country into the United States are required to be made in triplicate, and if the goods were actually purchased the invoices must be signed by the person owning or shipping the same; or if the goods were procured otherwise than by purchase, the invoices must be signed by the manufacturer or owner of the goods. Such invoices are also required, at or before the shipment of the goods, to be produced to our consul, vice-consul, or commercial agent, nearest the place of shipment, and shall have indorsed thereon, when so produced, a declaration signed by the purchaser, manufacturer, owner, or agent, setting forth that the invoice is in all respects true; and if the goods are subject to ad valorem duty and were obtained by purchase, that the invoice contains a true and full statement of the time when, and the place where, the same were purchased, and the actual cost thereof, and of all charges thereon. They are also required to contain certain statements as to discounts, bounties, drawbacks, and the currency paid by the purchaser; and when the goods were obtained in any other man-

ner than by purchase, the actual market value thereof at the time and place when and where the same were procured or manufactured, and if subject to specific duty, the actual quantity thereof, and that no different invoice of the goods has been or will be furnished to any one. 12 Stat. 737. The requirement also is, that the person producing the invoice shall at the same time declare to the officer the port at which it is intended to make entry of the goods. All these particulars appearing, as required in the section, it is then made the duty of the consul, vice-consul, or commercial agent, as the case may be, to indorse upon each of the triplicate invoices a certificate under his hand and official seal, stating that the invoice has been produced to him, with the date when produced, and the name of the person producing it, and the port at which it shall be declared to be the intention to make the entry. The same section contains a penal clause which provides that if any such owner, consignee, or agent of any such goods, shall knowingly make, or attempt to make, an entry thereof by means of any false invoice or false certificate of any such officer, or of any invoice which shall not contain a true statement of all the particulars so required, or by means of any false or fraudulent document or paper, or of any other false or fraudulent practice or appliance whatsoever, the goods or their value shall be forfeited. 12 Stat. 738.

More difficulty is encountered in stating the facts of the case, as the whole evidence, apparently, in the order it was introduced at the trial, is incorporated into the bill of exceptions. Such a practice is attended with serious inconvenience, and certainly finds no support either in the decisions of the supreme court, or in the standard treatises upon the subject. Only so much of the evidence given at the trial as may be necessary to present the legal questions raised and noted, should be embodied in the bill of exceptions in any case. All beyond that serves only to encumber the record and embarrass both court and counsel, as no fact tried by a jury can be otherwise re-examined in any court of the United States, than according to the rules of the common law. Zeller v. Eckert, 4 How. [45 U. S.] 297; Johnston v. Jones, 1 Black [66 U. S.] 220; Pennock v. Dialogue, 2 Pet. [27 U. S.] 15; 2 Tidd, Prac. 662; U. S. v. King, 7 How. [48 U. S.] 845. Cases may be imagined, where the embarrassment arising from conflicting testimony would be so great, that it would become the duty of the court to decline to re-examine the case, and to dismiss the writ of error. The present case, however, is not of that character, as there is not much conflict in that portion of the testimony which it will be necessary to consider, in determining the legal questions involved in the record. Goods, of the description mentioned in the information, filling fif-

teen merchandise cars, were imported by the claimant from Quebec into the United States, between the 22d of April, 1864, and the 3d of May following, and the evidence tends to show that all of the cars, except one, with the goods on board, arrived at Island Pond, in the state of Vermont, in the month of April of that year. The first car left Point Levy, opposite Quebec, on the 22d of April, and the last one on the 2d of May, and arrived at Island Pond on the next day. Much the larger portion of the importation consisted of chain cables, bar iron, scrap iron, and hoop iron; but the evidence shows that an invoice was presented to the American consul at Quebec, on the 23d of April of that year, wherein all the iron was described as "old chains and iron," and that it was therein rated at a uniform cost of $30 per ton. Being duly executed, and containing the proper declaration under oath, the consul granted the required certificates. The testimony also showed that the bar iron was stowed under the chains and scrap iron, and that the agent of the owner claimed that the whole should be admitted to entry as old scrap iron. Such claim was made after the cars arrived at Island Pond; but finding that the goods, or some of them, had been examined by the officers of the customs, he delayed making the entry, and that invoice was never presented. Sufficient goods to load one car had not come forward, and he prepared a new invoice, describing the iron as "bar iron, scrap iron, and old chains," increasing the quantity from eighty-eight to one hundred and twenty-five tons, but without any change as to the cost. Acting under representations that the goods had not been forwarded, the consul was induced, on the 2d of May of the same year, to cancel the first invoice, and to append the required certificates to the substitute. All of the goods were then at Island Pond, except one car-load, which remained at Point Levy, and went forward on that day. The agent of the owner knew that all the goods, except the one car-load, had arrived at the port of entry, because the conductor or person in charge of the cars at Island Pond had, at his request, opened some or all of them, and allowed him to examine the goods. The last car arrived on the 3d of May, and the agent of the owner, four days afterwards, made the entry in the custom-house at Island Pond, using the substituted invoice prepared by the owner or his agent, and certified by the consul after all the goods, except one car-load, had been imported into the United States, and had actually arrived at the port of entry. Enough of the testimony is presented in this statement, to exhibit the nature of the controversy, and to enable the court to test the accuracy of the instructions given by the presiding justice, and to determine whether there is any merit in the exceptions under consideration. Introductory to the instruc-

tions, the presiding justice told the jury that every shipment of goods from a foreign country, under the laws of the United States, should be accompanied by an invoice, and that, under the present law, such invoice must be made and certified by the consul of the United States, at or before the time of shipment. Having made that preliminary observation, he proceeded to instruct the jury in substance and effect as follows:—

1. That where the transportation is upon a railroad, the goods laden in every train of one or more cars, leaving the foreign port at the same time, must be considered a distinct shipment, and that the invoice required by the act of congress, must be presented by the importer at the time of the entry of such goods.

2. That if the jury found that the invoice by which the goods were entered, was made and certified after the arrival in the United States of all the cars, except one, then they were instructed that the invoice in the case was not the invoice authorized by law, and that no legal entry could be made by it; and that if the goods were entered by means of such an unlawful invoice, they were liable to forfeiture to the United States, if the entry was knowingly made by the use of such unlawful invoice.

3. That if any part of the goods arrived in the United States after the date of the invoice and declaration, and the invoice by which those goods were entered contained other goods belonging to previous shipments, and not distinguished from such other goods, then the invoice of such shipment was a false invoice, and subjected the goods, upon entry being made thereof, to forfeiture.

Undoubtedly the instructions are very inartificially drawn, but the foregoing statement, it is believed, expresses their substance and effect. Some of the forms of expression are ambiguous, but the instructions of the court must always receive a reasonable construction, and when so construed, it is not perceived that there is any such want of clearness as would mislead the jury. Courts are not inclined to grant a new trial merely on account of an ambiguity in the charge to the jury, where it appears that the complaining party made no effort at the trial to have the point explained. Castle v. Bullard, 23 How. [64 U. S.] 189. If the claimant supposed that there was any danger that the jury would be misled, he might well have asked that further and more definite instructions should be given; and if he had done so, and the prayer had been refused, this objection would be entitled to more weight. The correctness of the preliminary observations of the court, as applied to maritime shipments, cannot be doubted, and it is equally accurate as applied to shipments by a railroad, in a foreign country, when considered in connection with the subsequent instructions. Merchants often purchase goods

at one adventure, sufficient in quantity to load several vessels, but it is clear beyond doubt, that an invoice executed in triplicate in due form, as required, must be produced at or before each shipment, to the consul, and when so produced, must have indorsed thereon the required declaration. Those requirements attach to each shipment, and it is obvious that if it were not so, the revenue regulations might as well be repealed, as the contrary rule would open the door to every species of evasion and fraud. The same reasons require that the same rule should be applied to each train of one or more cars, laden with dutiable goods, purchased or otherwise acquired in a foreign country, and designed for importation under our revenue laws. Such shipments are subject to the same laws as importations in ships, and they must be governed by the same rules of construction.

Granting that to be so, then it is clear that the first instruction was correct, as the express words of the act of congress require, that an invoice in triplicate shall be produced to the consul at or before the shipment. The object of the provision was doubtless to afford protection to the revenue, but it is obvious that it would afford none, unless it be required that one copy of the invoice shall be presented to the consul at or before the entry. Adopt the construction that the shipper may forward his goods and procure his invoice afterwards, and the acts of congress and the regulations of the treasury department are of no avail. Argument, however, upon the point is unnecessary, as the language of the provision in the act of congress sustains the instruction in express words.

The closing paragraph of the second instruction is also the subject of complaint, but the criticisms, as the language is understood by the court, are without merit, and the objection must be overruled on that ground; and also for the reason that, it was the duty of the claimant, if he thought the language was ambiguous, to have requested a clearer statement of the views of the judge. The plain inference from the language reported is, that the judge intended to repeat the words of the provision on which the information is founded, and it is not doubted that it must have been so understood by the jury.

Objection is also taken to the third instruction, because it admits that the jury might find that the goods brought forward on the last car, which were accompanied by the substituted invoice, were forfeited, in case they found that the goods previously transported in the fourteen cars without any invoice, and before the substituted invoice was made, were contained in the same invoice, and in a manner that could not be distinguished. The theory of the United States is, that fourteen cars had been sent forward without any invoice, with the intention of defrauding the revenue, but that the agent, when he found

the goods had been examined, apprehending difficulty, returned and procured the substituted invoice, and the evidence tends to sustain that view of the transaction.

Irrespective, however, of the evidence, I am of the opinion that the instruction is quite correct. Importers cannot commingle unlawful and lawful importations in the same invoice, so that they cannot be distinguished, and then be allowed to save any portion of the goods from forfeiture, because such an invoice is false, and subjects the goods to the consequences attaching to a false invoice.

Due exceptions were also taken to the refusal of the court to instruct the jury as requested by the claimant. He presented fifteen prayers for instructions, as appears in the transcript, and they were all refused by the court. Refusal to grant instructions as prayed is not error, unless the instruction itself was correct, and needful to enable the jury rightly to perform their duty. Some of the prayers for instructions were plainly correct as abstract propositions of law, but I am of the opinion that the instructions given by the court, were amply sufficient to enable the jury to determine the whole controversy. The substantial charge in all the counts, except one, was, that the entry was knowingly made by means of a false invoice, and that question was fully and clearly submitted to the jury in the charge of the court. The whole controversy turned upon that question, as involved in five out of the six counts. Where the instructions given by the court cover the whole controversy, and are sufficiently full to enable the jury to decide the entire issue between the parties, the refusal of the court to give other instructions is not error. Prayers for instruction applicable to the fourth count were presented and refused. But the objections to the rulings in that behalf were not much pressed at the trial, and if they had been they could not be sustained.

After verdict and before judgment, the claimant submitted a motion in arrest of judgment. The foundation of the motion as alleged, is certain defects in the information, which are presented in thirty-one points. The bill of exceptions was filed on the 19th of January, 1865, and the statement in the minutes is, that the motion in arrest was overruled on the 31st of March following. The clerk's minutes also state that the claimant excepted to the ruling of the court, and that the bill of exceptions was sealed and placed on file; but both parties agree that no such bill of exceptions was ever allowed. Repeated decisions of the supreme court have established the rule, that such a statement in the minutes is of no benefit to a party, unless he seasonably avails himself of the right to reduce the exceptions to writing, and procures it to be sealed by the judge presiding at the trial. Pomeroy v. Bank of Indiana, 1 Wall. [68 U. S.] 598; Thompson v.

Riggs, 5 Wall. [72 U. S.] 663. Conceding that there is no exception in this case, still the claimant insists that the point is open to him, because he claims that the ruling of the judge is apparent in the record, and refers to certain well-known cases which affirm the rule, that errors apparent in the record may be commented on without any bill of exceptions. But the error of the proposition consists in the fact that the ruling of the court is not apparent in the record. He insists that it is so, because it is so stated in the minutes; but the cases already referred to decide that such a statement in the minutes is of no avail in the appellate court, unless the same is seasonably reduced to writing, and incorporated into a regular bill of exceptions. Recurring to the record, it will be seen that objections to the admissibility of evidence, were repeatedly made by the claimant during the trial, which objections were overruled by the court, and in his printed argument he proceeds upon the ground that the rulings of the court in that behalf, are included in the excepting clause of the bill of exceptions.

The statement in the paragraph immediately following the instructions of the court is, that the claimant did then and there except to the aforesaid rulings and instructions of the court, as well as to the refusal of the court to give the instructions, as prayed for by the claimant. The better opinion is, that the reference in that paragraph is only to the rulings of the court in giving the instructions, and to the refusal of the court to grant the claimant's prayer for instructions. The request of the claimant, as stated in the concluding paragraph of the exceptions, is, that the court will set their seal to the bill of exceptions · containing the several matters proved and given in evidence, and "the rulings, rejections, and directions of the judge." No particular ruling, rejection, or direction is specified, and there is nothing in the record by which the precise meaning of the excepting party can be ascertained. Mere objections to evidence are of no avail in an appellate court, unless it appears that the party excepted at the time. Exceptions must be taken at the time, but if seasonably taken and reserved, they may be drawn out afterward. Dredge v. Forsyth, 2 Black [67 U. S.] 568; U. S. v. Breitling, 20 How. [61 U. S.] 254; Phelps v. Mayer, 15 How. [56 U. S.] 160. Exception was taken by claimant during the trial, to the ruling of the court allowing a certain question to be put to the witness S. B. Locke, but the objection was not insisted on at the argument. The record also states in effect, that the claimant objected to the deposition of John S. Bowen, when offered by the district attorney, and the inference from the record is, that the claimant excepted to its admissibility, but upon what ground does not appear, and the caption of the deposition is not in the case. Special objection was also made to certain parts of the

deponent's testimony which were admitted by the court, but no exceptions were taken to the ruling of the court. Complaint is also made of the ruling of the court in excluding certain parts of the deposition of James Reid; and the statement in the record is, that the claimant then and there excepted to the ruling of the court. The testimony rejected was offered to show that Reid, who, on the 2d of May, 1864, had sworn that the invoice was true, and that he was the owner of the goods, had previously sold them to the claimant. Strong doubts are entertained whether the testimony was material, but if so, it was properly rejected. Alfonso v. U. S. [Case No. 188]. The claimant also complains that the witness Charles S. Ogden was permitted to testify that Reid had assigned to him reasons for procuring the substituted invoice, different from those assigned in his testimony, when no foundation had been laid to admit any such contradiction. But the record fails to state that the claimant excepted to the ruling of the court. The best conclusion I can form, in view of the whole case is, that there is no error in the record.

Judgment affirmed.