## Case No. 9,449.

MERCHANTS' NAT. BANK OF BOSTON v. STATE NAT. BANK OF BOSTON.

[3 Cliff. 205.][1]

Circuit Court, D. Massachusetts. Oct. Term. 1868.[2]

TRIAL — NONSUIT — EVIDENCE INSUFFICIENT—INSTRUCTION—USAGE—CASHIER—CERTIFICATE OF CHECKS.

1. Judges of the circuit courts cannot direct a peremptory nonsuit, but the defendant, when the plaintiff's case is closed, may move the court to instruct the jury that the evidence introduced by the plaintiff is not sufficient to warrant a verdict, and that, as matter of law, their verdict should be for the defendant.

[Cited in McConnell v. Merrill. 53 Vt. 153.]

2. The motion must be made at the close of the plaintiff's case, or the trial must proceed.

3. The motion is not addressed to the discretion; it presents a question of law, and the ruling of the court is a subject of exception.

4. A power evidenced by a usage must be considered as defined and limited by that usage; and if it appeared that a usage existed among certain banks other than the defendant bank for the cashier to certify checks upon them, it is doubtful if it could be regarded as evidence that the cashier of the defendant bank had any such authority.

5. The motion by the defendant in this case, that the court instruct the jury that the evidence

1 [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

2 [Reversed in 10 Wall. (77 U. S.) 604.]

introduced by the plaintiff was not sufficient to warrant a verdict, was allowed, because it was *held* that the act of June 3, 1864 [13 Stat. 99], conferred no authority upon the cashier of the defendant· bank to certify as good the checks described in the declaration.[2]

[Cited in Congress & E. Spring Co. v. Edgar, 99 U. S. 656.]

Assumpsit upon certain checks upon the defendant bank, and certified as good by the cashier thereof. At the close of the plaintiff's case the defendant moved that the court instruct the jury that the evidence introduced by the plaintiff was not sufficient to warrant a verdict.

Sidney Bartlett and J. G. Abbott, for plaintiff.

B. R. Curtis, C. B. Goodrich, and B. F. Thomas, for defendant.

Before CLIFFORD, Circuit Justice, and LOWELL, District Judge.

CLIFFORD, · Circuit Justice. Repeated decisions of the supreme court have established the rule that the judges of the circuit courts cannot direct a peremptory nonsuit when the plaintiff is present in court and claims the right to submit his case to the jury. But the defendant instead thereof, when the plaintiff's case is closed, may, if he sees fit, move the court to instruct the jury that thè evidence introduced by the plaintiff is not sufficient to warrant a verdict in his favor, and that as matter of law their verdict should be for the defendant. Unless such a motion is made for the defendant at the close of the plaintiff's case, the trial must proceed, and the evidence must be submitted to the jury, under the instructions of the court. When made, the motion is not one addressed to the discretion of the court, but it presents a question of law, which it is the duty of the court to decide, and the ruling of the court, in granting or refusing the motion, is as much the subject of exceptions by the party aggrieved as any other ruling of the court in the course of the trial.

In considering the motion, the court proceeds upon the ground that all the facts stated by the plaintiff's witnesses are true; and the rule is, that the motion should be denied, unless the court is of the opinion, in view of the whole of the plaintiff's evidence, oral and written, and of every inference the law allows to be drawn from it, that the plaintiff has not made out a case which would warrant the jury to find a verdict in his favor. Evidently the plaintiff's case, when viewed in that light, presents a question of law for the court, and it is well settled by the highest authority that it is the duty of the court to give the instruction whenever it appears that the evidence is not legally sufficient to serve as a foundation for a verdict for the plaintiff. Scuchardt v. Allens, ·1 Wall. [68 U. S.] 370; Parks v. Ross, 11 How. [52 U. S.]

[2] [Reversed in 10 Wall. (77 U. S.) 604.]

362; Bliven v. New England Screw Co., 23 How. [64 U. S.] 433.

Guided by these views, the court has come to the conclusion that the prayer for instruction presented by the defendants must be granted. Considering that the case is one which will probably be removed into the supreme court for review, the court does not deem it necessary or expedient to enter into any extended discussion of the several questions involved in the motion.

Briefly expressed, the grounds of the decision of the court may be stated in the following propositions, in which both judges concur:—

1. That the act of congress of June·3, 1864, entitled "An act to provide a national currency," etc. conferred no authority upon the cashier of the defendant bank to certify, as good, the several checks described in the first eight counts of the declaration. 13 Stat. 99, §§ 8, 23.

2. That the power to certify the checks of third persons, in behalf of the corporation, is not inherent in the office of a cashier of a national bank, nor is the exercise of such a power within the scope of his usual and ordinary duties. U. S. v. City Bank of Columbus, 21 How. [62 U. S.] 56; Miner v. Mechanics' Bank of Alexandria, 1 Pet. [26 U. S.] 71; Bank of U. S. v. Dunn, 6 Pet. [31 U. S.] 51; Fleckner v. U. S. Bank, 8 Wheat [21 U. S.] 360; Osborn v. Bank of U. S., 9 Wheat. [22 U. S.] 738; Mussey v. Eagle Bank, 9 Metc. [Mass.] 306; Kirk v. Bell, 16 Q. B. 290; 12 Eng. Law & Eq. 389; Hoyt v. Thompson, 1 Seld. [5 N. Y.] 320; Bank Com'rs v. Bank of Buffalo, 6 Paige, 497; 1 Hare & W. Lead. Cas. 460–472.

Recent cases decided in the courts of New York, referred to by the plaintiffs, do not affect the question, as they were founded upon either an admission in the pleadings, or an agreed statement of facts, admitting that the usage was that cashiers might certify checks, or on proof that such had been the practice of different banks. Whether the teller had authority from the bank to certify checks was not a question in the case of Willets v. Phoenix Bank, 2 Duer, 129, because the opinion of the court shows· that the complaint averred, and the answer admitted, that the certifying the checks was the act of the defendant bank. Slight examination also of the case of Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank, 4 Duer, 219, will show that it contains nothing to support the theory that the cashier of the defendant bank had authority to certify as good the checks in question in this case. The statement of the court in that case was that the teller "had general authority to certify checks," but the exception to his acts was, that his general authority in that behalf was qualified by directions not to give such certificates, unless the customer had funds. Contrary to those instructions, the charge of the defendant bank was, that he colluded with a customer,

and certified his checks, when the customer had no funds on deposit. The decision of the court was, that the bank was liable for the amount of the check, as it appeared beyond controversy that the plaintiff was a bona fide holder of the checks without notice. Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank, 14 N. Y. 623, 16 N. Y. 125.

Support to the theory of the plaintiffs cannot be drawn from the case of Claflin v. Farmers' & Citizens' Bank, 25 N. Y. 293, as the admitted fact in that case was, that the president who certified the checks had a general authority to that effect, but the checks as certified were held to be void, even in the hands of a bona fide holder, because they were checks drawn by himself. Checks on a bank marked "good," say the court in the case of Girard Bank v. Bank of Penn Tp., 39 Pa. St. 99, are to be regarded as evidences of deposit to the credit of the holder; but the authority of the president, cashier, or any other officer of the bank to make such a certificate was not made a question in the case, and was not decided by the court. By the true construction of the seventeenth article of the by-laws, it confers no such power upon the cashier of the bank, and there is no evidence in the case that the directors or the corporation ever authorized the acts of the cashier in making the certificates upon the checks under consideration. Proof of any such usage on the part of the defendant bank, or of any such antecedent practice by their cashier, is entirely wanting, and the evidence as to the usage of other banks fails altogether to show that the cashiers of the other banks in this city, or any one of them, are accustomed to certify checks as good either with or without funds in the bank.

Twenty-two of the cashiers of the national banks located and doing business in Boston were examined by the plaintiffs, and not one of them testified that he, as cashier of a bank organized under the act of congress, certified a check of a third person as good. None testified affirmatively in that respect, but one, if no more, testified that he never had given such a certificate. They all concur that as cashiers they borrow money for their respective banks whenever the bank is in want of money, and give the check of the bank for the amount, and sign it as cashier. Their testimony also is, that they buy and sell New York funds as the agents of their respective banks. Those selling give a draft on New York, signing it as cashier, and those buying give checks, or pay for the same in legal-tender notes or other national currency, or other current funds. The plaintiffs also proved that the cashier of the defendant bank prior to the 23d of February, 1867, borrowed large sums of money of the Second National Bank in Boston, on checks signed by him as cashier; and the cashier of the latter bank testified that he knew no one in the several transactions but the cashier who gave the checks. Giving full effect to testimony as to usage, it only proves that there is a usage among the banks in this city that the cashiers may borrow money of other banks than their own in the settlement of balances through the clearing-house, and may sign the checks given for the same in behalf of their respective banks, and that they may also buy and sell New York funds in the manner before explained. But the opinion of the court is, that the evidence introduced to show usage has no tendency to show that there is any usage among the banks in this city that the cashier of a national bank may certify checks as in this case. The better opinion is, that a power evidenced by usage must be considered as defined and limited by the usage. Strong doubts are entertained by the court, even if it appeared that such a usage prevailed among the other banks in the city, whether it could be regarded as evidence that the cashier of the defendant bank had any such authority, unless it appeared that the defendant bank had in some way directly or indirectly sanctioned the usage; but it is not necessary to decide that question at the present time. Be that as it may, it is nevertheless clear that usage cannot make a contract, or vary or enlarge one, as made by the parties. Evidence of usage is admissible to explain what is doubtful, but it is not admissible to contradict what is plain. Insurance Co. v. Wright, 1 Wall. [68 U. S.] 470; Bliven v. New England Screw Co., 23 How. [64 U. S.] 431; The Reeside, [Case No. 11,657]; Dickinson v. Gay, 7 Allen, 37; Dodd v. Farlow, 11 Allen, 428.

Viewed in any light, the court is of the opinion that there is no evidence of usage in this case which would warrant the jury in finding that the cashier of the defendant bank had any authority whatever to bind the bank by his certificates that the checks were good. The argument of the plaintiffs also is, that the certificates of the cashier import on their face that he was authorized to exercise that power in behalf of the bank. Stated in other words, the proposition is. that the certificate affords a prima facie presumption of authority in the officer to make the certificate, but the court is of a different opinion, as the proposition, if admitted, would enable the cashier to exercise all the powers vested in the directors by the act of congress, to which reference has been made. Payments made, or money received over the counter of the bank by the cashier, are doubtless within that rule, and so perhaps are any other acts of the cashier, within the scope of his usual and ordinary duties. But the doctrine cannot be applied to the acts of the cashier outside of his usual and ordinary duties, without establishing a rule which will enable every cashier at will to absorb all the powers of the directors, and to render null the most important features of the eighth section of the act of congress providing for a national currency. Doubtless the decision of the court in the case of Bank of Vergennes v. Warren,

7 Hill, 91. was in fact founded on that distinction; but if it was the intention of the court to give it a wider application, it is clear that it is contrary to the decisions of the supreme court of the United States, and cannot be favored by this court.

The ninth count of the declaration is for goods sold and delivered by the plaintiff bank to the defendant bank; but the court decides that there is no evidence in the case which would warrant the jury in finding that the plaintiff bank ever sold the gold certificates and the coin, or either of the same, to the defendant bank or to the cashier thereof in their behalf, as alleged in that count.

Assuming that the propositions stated are correct, then it necessarily follows that the plaintiffs have no cause of action under the tenth and eleventh counts of the declaration. They have not introduced any evidence in the case which would warrant the jury in finding a verdict in their favor under those counts. Motion granted.

[NOTE. Pursuant to the instruction of the court, the jury found for the defendant. The plaintiff excepted. and carried the case by writ of error to the supreme court. where Justice Swayne reversed the decision of this court. and awarded a venire de novo; Justices Clifford and Davis dissenting. 10 Wall. (77 U. S.) 604.]