## Spring Company v. Edgar.

1. This was an action against the proprietor of a park, to recover for injuries sustained by A. from an attack by a male deer which, with other deer, was permitted to roam in the park, and which the declaration charged that the defendant knew to be dangerous. At the trial, evidence was introduced to show that the park was open and accessible to visitors; that A. was in the habit of visiting it, and when lawfully there was attacked by the deer and severely injured; that she had often seen deer — about nine in number, three of whom were bucks, the oldest four years old — running about on the lawn, and persons playing with them, and that she had there seen the sign, " Beware of the buck; " that the park contained about eleven acres; that notices were put up in the park a year or two before, cautioning visitors not to tease or worry the deer; that she had no knowledge or belief, prior to the attack

upon her, that the deer were dangerous, if not disturbed. Experts testified that in their opinion the male deer, at the season when the injury was sustained by A., was a dangerous animal. The bill of exceptions does not show that all the evidence for A. is set forth in it, or that the defendant introduced any. *Held,* that a motion to dismiss the action, nonsuit the plaintiff, and to direct the jury to return a verdict for the defendant, was properly denied.

2. The court called attention to the testimony of the experts, and instructed the jury that it was for them to determine its weight. *Held,* that the instruction was proper.

3. The jury were also instructed not to believe any extravagant statement of the injuries received by the plaintiff, and that, when they had made up their minds as to the amount really sustained, they should not be nice in the award of compensation, but that it should be liberal. The defendant did not request the instruction to be qualified or explained, or a different one given. *Held,* that the charge in that respect furnishes no ground for reversing the judgment.

ERROR to the Circuit Court of the United States for the Northern District of New York.

This is an action by Ann P. Edgar to recover from the Congress and Empire Spring Company $20,000 for personal injuries inflicted on her by a buck deer, the property of that company, in the Congress Spring Park at Saratoga Springs, New York.

The declaration charges that on and for a long time prior to Oct. 20, 1870, the defendant had been and was the owner and proprietor of "Congress Spring," from which the defendant has realized, and does realize, great gains and profits; that said spring has for a long time been kept open and accessible to the public generally, and all people have been invited to patronize its waters, in various forms, by the defendant; that, to make it more inviting and attractive, the defendant opened in connection therewith an extensive park, ornamented with fountains, trees, shrubbery, and flowers, through which extensive gravelled walks are made for the comfort of those who indulge in the use of the mineral waters and enjoy the landscape; that further to enhance the attractions of said park, the defendant obtained and in some degree domesticated several wild deer, among them a large and powerful buck, with large and dangerous horns, but of vicious character and habits, known as the "Ugly Buck;" that the defendant, its officers and agents, well knowing that the said buck was vicious, and dangerous to be

permitted to run at large in said park, did permit him to run at large in said park, and while the plaintiff had on that day visited said springs to partake of the waters, and was in the day time peaceably proceeding along one of the walks in said park, constructed by the defendant for the comfort of visitors, he did fiercely attack the plaintiff with his horns, head, and feet, and did bite, bruise, and greatly lacerate her in various parts of her person.

The company, in addition to the general issue, interposed a plea that the damage and injury complained of by the plaintiff was occasioned by her own fault and negligence, and by her refusal to obey the reasonable rules and regulations of the company, and by her voluntary disregard of the express notice given her to keep off the grass in the grounds, and not to interfere with or molest the buck.

At the trial, the plaintiff testified that on the morning in question, after drinking at the spring, she walked through the grounds, and met a deer which attacked her, goring and striking her with his head and horns, and greatly injuring her. On her cross-examination, she testified, in substance, that before the occurrence she had frequently been in the habit of going to Congress Spring Park to enjoy the water and the pleasure of a walk; that she noticed the deer in the park as early as 1866, and had often seen them running about on the lawn; that she had seen persons fondling the deer and playing with them on different occasions; and that she had noticed signboards through the park containing the notice, "Beware of the buck."

A witness for the plaintiff, introduced as an expert, testified that he was a dentist, and resided in Albany; that he was to some extent acquainted with the habits and nature of the deer, and had hunted them; that in his opinion the buck deer are not generally considered as dangerous, but that in the fall they are more dangerous than at other seasons. Another expert testified that he was a taxidermist, and had made natural history a study, and had read the standard authors in regard to the general characteristics of deer; that from his reading he was of opinion that the male deer, after they have attained their growth and become matured, are dangerous, and that dur-

ing the rutting season — from the middle of September to the middle of December — the buck deer are generally vicious. The defendant objected to all the testimony of the experts, on the ground that the witnesses had not shown themselves competent as experts, and that it was improper, immaterial, and incompetent ; but the court overruled the objection, and the defendant excepted. Another witness for the plaintiff testified that the park contained about eleven acres ; that in 1870 there` were nine deer in the park, among them three bucks, the oldest of which was four years old ; that he first learned that this buck was ugly when the plaintiff was knocked down ; that in 1868 notices were put up in the park cautioning visitors not to tease or worry the deer ; that such notices were posted at dif-· ferent places in the park ; that the park was frequented by a great number of people, with the consent of the defendant, all through the season ; that the object of keeping deer in the park was their beauty ; that up to the time of the accident he had no knowledge, information, or belief that a deer or buck, or this buck in the rutting season, or any other, ever attacked a person that was not disturbing or interfering with him.

. The testimony having closed, the defendant moved that the action be dismissed, the plaintiff nonsuited, and that a verdict be directed in favor of the defendant, on the following grounds :

1. The evidence does not establish a cause of action.

2. It appears that the place where the accident happened was the private grounds of the defendant ; that the plaintiff knew that the defendant kept in those grounds this buck and other deer, and went there with full knowledge of all the circumstances.

3. That the plaintiff is chargeable with the same knowledge of the character of the buck as the defendant.

4. That no knowledge by the defendant of the vicious character of the buck has been shown.

5. That if any negligence existed, the plaintiff was guilty of negligence equally with the defendant.

The court denied the motion, and the defendant duly excepted.

The court thereupon charged the jury, and among other things stated as follows: "Some testimony has been produced

here by witnesses who have stated to you the result of their reading in natural history, and the result of the opinion expressed by hunters and sportsmen, as to the general characteristics of the deer; and it is for you to say how much is proved by that evidence. The plaintiff claims to show by that evidence that the deer at a certain season of the year is a dangerous animal. It is for you to say whether, after the cross-examination of the witnesses, you can arrive at that conclusion."

Upon the question of damages, the court, among other things, charged as follows: "In these cases, while, upon the one hand, a jury should guard themselves against the exaggeration which so frequently, and I may say generally, characterizes the statements of the parties in regard to their injuries, and in regard to the damages they have sustained, upon the other hand, when you make up your mind as to the amount really sustained, you are not to be nice in the award of compensation. It should be liberal." To the concluding portion of the charge the defendant excepted.

There was a verdict for the plaintiff for $6,500; and judgment having been rendered thereon, the defendant sued out this writ of error.

*Mr. Charles S. Lester* for the plaintiff in error.

The liability of the owner of an animal of any description for an injury committed by it is founded upon his negligence, actual or presumed. *Earl* v. *Van Alstyne*, 8 Barb. (N. Y.) 630; Wharton, Negligence, sects. 918–926; *Earhart* v. *Youngblood*, 27 Pa. St. 327; Shearman & Redfield, Negligence, sect. 185; *Munn* v. *Reed*, 4 Allen (Mass.), 431; *Ilott* v. *Wilkes*, 3 Barn. & Ald. 304.

The owner of a domestic animal is not liable for injuries committed by it, unless he had notice that it was accustomed to do mischief. Buller's Nisi Prius, 77; 3 Bla. Com. 153; *Vrooman* v. *Sawyer*, 13 Johns. (N. Y.) 339; *Van Leuven* v. *Lyke*, 1 N. Y. 515.

The distinction in the liability of the owner of different classes of animals does not always depend upon their being *feræ naturæ* or *mansuetæ naturæ*. Deer, when reclaimed and domesticated, cease to be *feræ naturæ*. 2 Kent, Com. 348, 349.

It follows, therefore, that if the deer was a domesticated animal, there was no cause of action made out, because there was no evidence that it had ever before committed any injury, or exhibited any disposition to commit one, nor that the defendant had any knowledge that it possessed a dangerous disposition. The court should have directed a verdict for the defendant.

But if it be claimed that a deer belongs to the same class as lions, bears, and tigers, then, as the plaintiff is chargeable with the same knowledge of its dangerous character as is the defendant, her negligence in going into the enclosure where she knew this deer was confined was such contributory negligence as barred her from recovering. Wharton, Negligence, sect. 926; *Earhart* v. *Youngblood, supra; Brock* v. *Copeland,* 1 Esp. 203; *Ilott* v. *Wilkes, supra.*

The evidence of so-called experts admitted to prove the general character of deer was either inadmissible, because the plaintiff was presumed to have knowledge of such character, or it was incompetent.

The character and disposition of a wild or domestic animal is a fact to be ascertained by experience.

It is only upon questions of science, skill, or trade that opinions of experts are admissible. 1 Greenl. Evid., sect. 440; *Dewitt* v. *Bailey,* 9 N. Y. 375; *Hewlet* v. *Wood,* 55 id. 634; *Bristow* v. *Sequeville,* 5 Exch. 275; *Nelson* v. *Sun Mutual Insurance Co.,* 71 N. Y. 453.

The books of natural history which a witness has read are not of themselves competent evidence. *Commonwealth* v. *Wilson,* 1 Gray (Mass.), 337; *Morris* v. *Lessee of Harmer's Heirs,* 7 Pet. 554; *McKinnon* v. *Bliss,* 21 N. Y. 206; *Collier* v. *Simpson,* 5 C. & P. 73.

The statements of what a witness has read in relation to living animals well known to many people is the merest hearsay.

The court below, in charging the jury that when they make up their minds as to the amount of damages really sustained, they were not to be nice in the award of compensation, but that it should be liberal, in effect told them that the plaintiff was entitled to something more than actual compensation, — that she was, in fact, entitled to exemplary or punitive dam-

ages.  The word " liberal " means profuse, generous, ample,
something more than strict and just compensation, and it was
so understood by the jury.  That the word is frequently used
by courts and in text-books as synonymous with exemplary,
see *Tullidge* v. *Wade*, 3 Wils. 18 ; *Whipple* v. *Walpole*, 10 N.. H.
130 ; *Tillotson* v. *Cheetham*, 3 Johns. (N. Y.) 64 ; *Taylor* v.
*Church*, 8 N. Y. 463 ; Sedgwick, Damages, p. 40.

Exemplary damages are only awarded where there has been
wilful misconduct, or a positive intention to injure.  *Milwaukie
& St. Paul Railway Co.* v. *Arms*, 91 U. S. 489 ; *Cleghorn* v.
*New York Central & Hudson River Railroad Co.*, 56 N. Y. 44 ;
*Hamilton* v. *Third Avenue Railroad Co.*, 53 id. 25 ; *Wallace* v.
*Mayor of New York*, 18 How. (N. Y.) Pr. 169.  They are never
recoverable against the owner of an. animal for injuries done
by it.  *Keightlinger* v. *Egan*, 65 Ill. 235.

*Mr. George W. Miller, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Animals *feræ naturæ*, as a class, are known to be mischiev-
ous ; and the rule is well settled, that whoever undertakes to
keep such an animal in places of public resort is or may be
liable for the injuries inflicted by it on a party who is not
guilty of negligence, and is otherwise without fault.

Compensation in such a case may be claimed of the owner or
keeper for the injury ; and it is an established rule of pleading
that it is not necessary to aver negligence in the owner or
keeper, as the burden is upon the defendant to disprove that
implied imputation.  Cases have often arisen where no such
averment was contained in the declaration, and the uniform
ruling has been that the omission constitutes no valid objec-
tion to the right of recovery.  *May* v. *Burdett*, Law Rep.
9 Q. B. 99.

Negligence was not alleged in that case.  Trial was had, and
the verdict being for the plaintiff, the defendant moved in
arrest of judgment that the declaration was bad for not alleging
negligence or some default of the defendant in not properly or
securely keeping the animal.  Attempt was made by a very
able counsel to support the motion, upon the ground that even
if the declaration was true, still the injury might have been

occasioned entirely by the carelessness and want of caution on the part of the plaintiff; but Lord Denman and his associates overruled the motion in arrest, and decided that whoever keeps an animal accustomed to attack and injure mankind, with knowledge that it is so accustomed, is *prima facie* liable in an action on the case at the suit of the person attacked and in-jured, without any averment of negligence or default in secur-ing or taking care of the animal; and the Chief Justice added, what it is important to observe, that the gist of the action is the *keeping* of the animal after knowledge of its mischievous propensities.

Precedents both ancient and modern, it seems, were cited in the argument and were examined by the court, and the learned Chief Justice remarked, that with scarcely an exception they merely state the ferocity of the animal and the knowledge of the defendant, without any allegation of negligence or want of care. *Jackson* v. *Smithson*, 15 Mee. & W. 563; *Popplewell* v. *Pierce*, 10 Cush. ( Mass.) 509.

Injuries of a serious character inflicted by a mischievous deer, which the defendant company kept in their park, were received by the plaintiff at the time and place alleged, for which she claims compensation of the company. By the declaration it appears that the company is the owner and pro-prietor of the Congress Spring at Saratoga in the State of New York, whose waters have become celebrated for their medicinal qualities and the source of great gains and profits to the com-pany. Among other things the plaintiff alleges that the spring had for a long time been kept open and accessible to visitors, the public being invited in various forms to patronize its waters, and that to make it more inviting and attractive the company had opened in connection therewith an extensive park, ornamented with fountains, trees, shrubbery, and flowers, through which extensive gravelled walks have been constructed for the use and comfort of those who resort there to use the mineral waters and to enjoy the landscape; that the company, in order further to enhance the attractions of the park, had obtained and in some degree domesticated several wild deer, and among them a large and powerful buck, with large horns and of vicious character and habits, which were well known

to the defendant company, their officers and agents, and the residents of the village.

Actual knowledge by the company of the mischievous character of the animal is alleged by the plaintiff, and she avers that the vicious animal on the day named, to wit, the 18th of October, 1870, was permitted to run at large in the park, and that she on that day visited the spring to partake of its waters, and that while she was peaceably proceeding along one of the walks in the park she was fiercely attacked by the mischievous buck and greatly injured, bruised, and lacerated, as more fully set forth in the declaration.

Service was made; and the defendant company appeared and pleaded: 1. The general issue. 2. That the damage and injury suffered by the plaintiff were occasioned by her own fault in neglecting to obey the rules and regulations of the company. On motion of the plaintiff a jury was impanelled, and the parties went to trial, which resulted in a verdict and judgment in favor of the plaintiff. Exceptions were filed by the defendant company, and they sued out the pending writ of error.

Since the cause was entered here the defendant company has filed the following assignments of error: 1. That the court, in view of the evidence, should have directed a verdict for the defendant. 2. That the court erred in admitting the questions to the two witnesses called by the plaintiff as experts. 3. That the court erred in the instructions given to the jury in respect to the question of damages.

Certain animals *feræ naturæ* may doubtless be domesticated to such an extent as to be classed, in respect to the liability of the owner for injuries they commit, with the class known as tame or domestic animals; but inasmuch as they are liable to relapse into their wild habits and to become mischievous, the rule is that if they do so, and the owner becomes notified of their vicious habit, they are included in the same rule as if they had never been domesticated, the gist of the action in such a case, as in the case of untamed wild animals, being not merely the negligent keeping of the animal, but the keeping of the same with knowledge of the vicious and mischievous propensity of the animal. Wharton, Negligence, sect. 922; *Decker* v. *Gammon*, 44 Me. 322.

Three or more classes of cases exist in which it is held that the owners of animals are liable for injuries done by the same to the persons or property of others, the required allegations and proofs varying in each case. 2 Bla. Com., per Cooley, 390.

Owners of wild beasts or beasts that are in their nature vicious are liable under all or most all circumstances for injuries done by them ; and in actions for injuries by such beasts it is not necessary to allege that the owner knew them to be mischievous, for he is presumed to have such knowledge, from which it follows that he is guilty of negligence in permitting the same to be at large.

Though the owner have no particular notice that the animal ever did any such mischief before, yet if the animal be of the class that is *feræ naturæ* the owner is liable to an action of damage if it get loose and do harm. 1 Hale P. C. 430 ; *Worth* v. *Gilling*, Law Rep. 2 C. P. 3.

Owners are liable for the hurt done by the animal even without notice of the propensity, if the animal is naturally mischievous, but if it is of a tame nature, there must be notice of the vicious habit. *Mason* v. *Keeling*, 12 Mod. Rep. 332 ; *Rex* v. *Huggins*, 2 Ld. Raym. 1574.

Damage may be done by a domestic animal kept for use or convenience, but the rule is that the owner is not liable to an action on the ground of negligence, without proof that he knew that the animal was accustomed to do mischief. *Vrooman* v. *Sawyer*, 13 Johns. (N. Y.) 339 ; *Buxendin* v. *Sharp*, 2 Salk. 662 ; *Cockerham* v. *Nixon*, 11 Ired. (N. C.) L. 269.

Domestic animals, such as oxen or horses, may injure the person or property of another, but courts of justice invariably hold that if they are rightfully in the place where the injury is inflicted the owner of the animal is not liable for such an injury, unless he knew that the animal was accustomed to be vicious ; and in suits for such injuries such knowledge must be alleged and proved, as the cause of action arises from the keeping of the animal after the knowledge of its vicious propensity. *Jackson* v. *Smithson*, 15 Mee. & W. 563 ; *Van Leuven* v. *Lyke*, 1 N. Y. 515 ; *Card* v. *Case*, 5 C. B. 632 ; *Hudson* v. *Roberts*, 6 Exch. 697 ; *Dearth* v. *Baker*, 22 Wis. 73 ; *Cox* v. *Burbridge*, 13 C. B. N. S. 430.

It appears by the bill of exceptions that the plaintiff on the morning of the day of the injury entered the park belonging to the defendant company ; that after drinking of the water of the spring she walked through the grounds and that she met the mischievous deer ; that he attacked her, goring and striking her with his head and horns, whereby she was thrown down and greatly injured and put to great suffering and expense, as more fully set forth in her testimony.    On her cross-examination she testified that she had been in the habit of visiting the park to enjoy the water and the pleasure of the walk ; that she had noticed the deer at an earlier period. and had often seen them running about on the lawn ; that she had seen persons playing with them on different occasions ; and that she had noticed the signboard posted in the park containing the notice, " Beware of the buck."    Another witness called by the plaintiff testified that the park contains about eleven acres ; that there were nine deer in the park, among which were three bucks, the oldest being four years old ; that he first heard that the buck was ugly when the plaintiff was attacked and knocked down ; that notices were put up at different places in the park a year or two before, cautioning visitors not to tease or worry the deer; and that he had no knowledge or belief prior to the accident that the buck or any other of the herd would attack any person if they were not disturbed.    Expert witnesses were called by the plaintiff, and they gave it as their opinion that the male deer in the fall of the year is a dangerous animal.

Five witnesses were examined in behalf of the plaintiff ; but the bill-of exceptions does not show that the-defendant company gave any evidence in reply, nor is it stated that the whole testimony introduced by the plaintiff is reported.    When the evidence was closed, the defendant moved that the action be dismissed, that the plaintiff be nonsuited, and that the court direct the jury to return a verdict in favor of the defendant.

Discussion of the first two propositions involved in the motion is wholly unnecessary, for two reasons : 1. Because the jurisdiction of the court was beyond doubt, and the record shows that the suit was well brought.    2. Because it is not competent for the Circuit Court to order a peremptory nonsuit in any case.

Circuit courts cannot grant a nonsuit, but the defendant at the close of the plaintiff's case may move the court to instruct the jury that the evidence introduced by the plaintiff is not sufficient to maintain the action, and to direct a verdict for the defendant. In considering the motion the court proceeds upon the ground that all the facts stated by the plaintiff's witnesses are true, and the rule is that the motion will be denied unless the court is of the opinion that in view of the whole evidence, and of every inference the law allows to be drawn from it, the plaintiff has not made out a case which would warrant the jury to find a verdict in his favor. *Merchants' National Bank* v. *State National Bank*, 3 Cliff. 205; *Same* v. *Same*, 10 Wall. 6:5.

Tested by that rule, which is everywhere admitted to be correct, it is clear that the motion of the defendant was properly denied, for several reasons: 1. Because the proof of injury was overwhelming. 2. Because the allegation that the animal was vicious and mischievous was satisfactorily proved. 3. Because the evidence to prove that the defendant company had knowledge of the vicious and mischievous propensity of the animal was properly left to the jury, and it appearing that the Circuit Court overruled the motion for a new trial, the court here cannot disturb the verdict except for error of law. 4. Because the cause of action in the case arises not merely from the keeping of the animal, but from the keeping of the same after knowledge of its vicious and mischievous propensities. 5. Because the evidence is plenary that the plaintiff was rightfully in the place where she was injured, and that the owners of the vicious animal, inasmuch as the evidence tended to show that they had knowledge of its mischievous propensities, are justly held liable for the consequences. *Stiles* v. *Navigation Company*, 33 L. J. N. S. 311; *Oakes* v. *Spaulding*, 40 Vt. 347; *Sarch* v. *Blackburn*, 4 C. & P. 297; *Same* v. *Same*, 1 Moo. & M. 505; *Besozzi* v. *Harris*, 1 Fos. & Fin. 92.

Whoever keeps an animal accustomed to attack or injure mankind, with the knowledge of its dangerous propensities, says Addison, is *prima facie* liable to an action for damages at the suit of any person attacked or injured by the animal, without proof of any negligence or default in the securing or taking care of the animal, the gist of the action being the keeping of

the animal after knowledge of its mischievous disposition.   Addison, Torts (ed. 1876), 283; *Dickson* v. *McCoy*, 39 N. Y. 400; *Applebee* v. *Percy*, Law Rep. 9 C. P. 647; Lead. Cas. Torts, 489.

Witnesses are not ordinarily allowed to give opinions as to conclusions dependent upon facts not necessarily involved in the controversy; but an exception to that rule is recognized in the case of experts, who are entitled to give their opinions as to conclusions from facts within the range of their specialties, which are too recondite to be properly comprehended and weighed by ordinary reasoners.   1 Wharton, Evid., sect. 440.

Men who have made questions of skill or science the object of their particular study, says Phillips, are competent to give their opinions in evidence.   Such opinions ought, in general, to be deduced from facts that are not disputed, or from facts given in evidence; but the author proceeds to say that they need not be founded upon their own personal knowledge of such facts, but may be founded upon the statement of facts proved in the case.   Medical men, for example, may give their opinions not only as to the state of a patient they may have visited, or as to the cause of the death of a person whose body they have examined, or as to the nature of the instruments which caused the wounds they have examined, but also in cases where they have not themselves seen the patient, and have only heard the symptoms and particulars of his state detailed by other witnesses at the trial.   Judicial tribunals have in many instances held that medical works are not admissible, but they everywhere hold that men skilled in science, art, or particular trades may give their opinions as witnesses in matters pertaining to their professional calling.   1 Phil. Evid. (ed. 1868) 778.

It must appear, of course, that the witness is qualified to speak to the point of inquiry, whether it respects a patented invention, a question in chemistry, insurance, shipping, seamanship, foreign law, or of the habits of animals, whether *feræ naturæ* or domestic.

On questions of science, skill, or trade, or others of like kind, says Greenleaf, persons of skill, sometimes called experts, may not only testify to facts, but are permitted to give their opinions in evidence.   1 Greenl. Evid., sect. 400; *Buster* v. *Newkirk*, 20 Johns. (N. Y.) 75.

Whether a witness is shown to be qualified or not as an expert is a preliminary question to be determined in the first place by the court; and the rule is, that if the court admits the testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony. Cases arise where it is very much a matter of discretion with the court whether to receive or exclude the evidence; but the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous. *D. & C. Steam Towboat Co.* v. *Starrs*, 69 Pa. St 3( *Page* v. *Parker*, 40 N. H. 48; *Tucker* v. *Massachusetts Central Railroad*, 118 Mass. 546.

Experts may be examined, says Justice Grier, to explain the terms of art, and the state of the art at any given time. Speaking of controversies between a patentee and an infringer, he says that experts may explain to the court and jury the machines, models, or drawings exhibited in the case. They may point out the difference or identity of the mechanical devices involved in their construction, and adds, that the maxim "*cuique in sua arte credendum*" permits them to be examined in questions of art or science peculiar to their trade or profession. *Winans* v. *New York & Erie Railroad Co.*, 21 How. 88; *Ogden* v. *Parsons et al.*, 23 id. 167.

Even if the witnesses are not properly to be regarded as experts, the court is of the opinion that the testimony was properly admitted as a matter of common knowledge.

Well-guarded instructions were given to the jury on the subject, as appears from the transcript. Their attention was directed to the testimony, and they were told that it was for them to determine its weight, which shows that the defendant has no just ground of complaint.

Complaint is also made by the defendant that one sentence of the charge of the court in respect to the damages is erroneous. When you have made up your mind, said the judge, as to the amount really sustained, you are not to be nice in the award of compensation. It should be liberal. ·

Exception was taken to that remark without request for a different instruction, or that it should be qualified or explained in any way. Before that remark was made the judge cautioned the jury against giving credence to any extravagant statement

of the injuries received, and then told them that when they had made up their minds as to the amount, meaning the amount of the injury really sustained, they should not be nice in the award of compensation, adding, as if to qualify the antecedent caution given in favor of the defendant, that it should be liberal.

In examining the charge of the court for the purpose of ascertaining its correctness in point of law, the whole scope and bearing of it must be taken together. It is wholly inadmissible to take up single and detached passages, and to decide upon them without attending to the context, or without incorporating such qualifications and explanations as naturally flow from other parts of the instructions. *Magniac and Others* v. *Thompson*, 7 Pet. 348.

Instructions given by the court at the trial are entitled to a reasonable interpretation, and if the proposition as stated is not erroneous, they are not as a general rule to be regarded as incorrect on account of omissions or deficiencies not pointed out by the excepting party. *Castle* v. *Bullard*, 23 How. 172.

Appellate courts are not inclined to grant a new trial on account of an ambiguity in the charge to the jury, where it appears that the complaining party made no effort at the trial to have the matter explained. *Locke* v. *United States*, 2 Cliff. 574; *Smith* v. *McNamara*, 4 Lans. (N. Y.) 169.

Requests for such a purpose may be made at the close of the charge, to call the attention of the judge to the supposed error, inaccuracy, or ambiguity of expression; and where nothing of the kind is done, the judgment will not be reversed, unless the court is of the opinion that the jury were misled or wrongly directed. *Carver* v. *Jackson, ex dem. Astor et al.*, 4 Pet. 1; *White* v. *McLean*, 57 N. Y. 670.

None of the exceptions can be sustained, and there is no error in the record.

*Judgment affirmed.*