SOLON T. GLIDDEN ET AL., PLAINTIFFS IN ERROR, V. FRANK MOORE, ADMR., DEFENDANT IN ERROR.

**Negligence:** S. T. G. was the owner of a tract of uninclosed land used for grass and pasturage, across which there was a neighborhood road, not laid out as a highway, but which had been used as such by the public since the early settlement of the country. He was also the owner of a vicious and dangerous bull which he knew of having attacked and gored several different persons. July 22, 1879, he caused this bull to be lariated near to the said road on the said land. So that W. D. M., an old man 63 years of age, while passing along said road, was by the said bull attacked, gored, and killed. *Held,* That S. T. G. was guilty of such negligence and want of ordinary care, as rendered him liable, in an action by the administrator of W. D. M., and that it made no difference that W. D. had, several years before, been forbidden by S. T. G. to use the said road.

ERROR to the district court for Washington county. Tried below before SAVAGE, J.

*W. H. Munger, Ballard & Walton,* and *E. F. Gray,* for plaintiffs in error.

On deposition of March, cited *Payne v. Briggs,* 8 Neb., 75. Verdict contrary to evidence, deceased being guilty of contributory negligence. *Michigan Central v. Colman,* 28 Mich., 447. Cooley on Torts, 346. *Simmons v. Railroad,* 6 Ohio State, 105. *Warner v. N. Y. Central R. R.,* 44 N. Y., 465. *Railroad v. McLaren,* 62 Ind., 566.

*L. W. Osborn,* for defendant in error.

Cases cited by plaintiff in error are railroad cases and not applicable. Shearman & Redfield on Negligence, 225 *et seq.* Id., 30–40. *Murray v. Young,* 12 Bush, 337. Cooley on Torts, 666–670.

COBB, J.

While in this case there are a great number of errors assigned by the petition in error, there are but four insisted on in the brief, and our examination will be confined to them.

1. That the deposition of William T. March should have been suppressed and not admitted in evidence, etc.

The objection to this deposition is as to the certificate of the notary public before whom it was taken, and which it is claimed is within the objection sustained in the case of *Payne v. Briggs,* 8 Neb., 75. The certificate is in the following words: "I, O. W. Rice, a notary public, duly appointed and qualified, residing in and for Knox county, and state of Nebraska, do hereby certify that William I. March was by me first duly sworn to testify the truth, the whole truth, and nothing but the truth, and that the deposition by him subscribed as above set forth was reduced

to writing by myself in the presence of the witnesses, and was subscribed by the said witness in my presence, and was taken at the time and place in the annexed notice specified; that I am not counsel, attorney, or relative of either party, or otherwise interested in the event of this suit. And said deposition was commenced at the time in said notice specified and completed as above stated.

"In testimony whereof witness my hand and seal of office this 30th day of April, 1881.

[SEAL]                    "O. W. RICE, *Notary Public.*"

The "annexed notice" was for the taking of the deposition "at the office of O. W. Rice, in the town of Creighton, county of Knox, and state of Nebraska," etc.

The objection to this certificate is technical. It is strange that a notary should neglect or fail to place the common and perfunctory words called the venue at the head of the certificate, but it has, we think, always been held sufficient where the same appeared in the body of the certificate, as it does here. The trouble with the certificate in *Payne v. Briggs* was that it nowhere appeared that the notary signing the certificate was appointed by the authority of, or resided within the jurisdiction of, the state of Colorado, where the deposition was to have been taken according to the notice.

2. The verdict is contrary to the evidence and law of the case.

The cause of action against the plaintiff in error (defendant in the court below) was for keeping and negligently and inefficiently tethering a certain vicious bull, known to be dangerous to mankind, near to a certain highway or path along which persons were accustomed to travel and pass. By which bull plaintiff's intestate, while lawfully passing along said highway, was attacked, gored, and killed.

The evidence is sufficient as to the vicious and dangerous character of the bull, owned and kept by plaintiff in error, which was well known to him. That on the day in

question the bull was tethered by a rope, in which was a wooden swivel, near to but out of reach of the path leading across the land of plaintiff in error, and near by where said path crosses a small stream of water. That some time in the afternoon defendant in error's intestate and father, an old man sixty-three years of age, living on the adjoining farm, started from his residence on foot to go to the neighboring village on business; that his way to said village was along the said path; that towards evening he was found in a bruised, wounded, and dying condition, near the said path where it crossed the said small stream of water, at which time said bull, having loosed himself by breaking the said wooden swivel, was found standing in the water of said stream near the said path. The injured man died before ten o'clock that evening.

It is not questioned, nor could it be, from the medical and other testimony, that deceased received the fatal injuries from the said bull. It is contended by counsel upon the evidence that the deceased was guilty of contributory negligence. There was some evidence of deceased having heard of the dangerous character of said bull; also evidence of his having been some years before forbidden to use the said path across the land of plaintiff in error. There was also evidence that after the injury the straw hat of the deceased was found on the ground, within the length of the bull's tether of the point at which he had been fastened. The bull in question was a crippled animal, having but a partial use of one of his fore legs. There was considerable and conflicting testimony as to how fast he could run or move. Undoubtedly if the deceased was guilty of negligence, which contributed directly to the fatal injury, that would be a defense. But the consideration of this question falls more properly within the third head of the brief of plaintiff in error, which is that the fifth instruction given in charge to the jury by the court was erroneous. Said charge was as follows: "5. The plaintiff, however, cannot recover if the deceased was on his

part guilty of a want of ordinary care, which directly contributed to the injury sustained by him. If the deceased carelessly and negligently put himself in the way of the bull, knowing him to be vicious and dangerous, then he could not recover if injured. But the mere passing along a usually traveled way, even though upon the defendant's premises, and even though he was a trespasser, would not of itself be such negligence as would deprive him of the right to recover."

Plaintiff in error objects to this instruction because, as he alleges, it assumes that the only act of negligence on the part of the deceased was that of merely passing along a usually traveled way upon the premises of defendant, etc. The witness, Mrs. Mary Glidden, wife of the plaintiff in error, testified that she drove along the road in question about half-past three o'clock that afternoon. She saw the bull lying down about fifteen or twenty feet from the road on the east side, and perhaps thirty feet from the bridge; that he was tied with a rope about fifteen feet long; that the length of the rope would allow him to get within six or eight feet of the road; that he could not get clear to the road, and that he could *just go to the creek so he could drink.* A half or three-quarters of an hour afterwards she returned the same way. She then saw the deceased on the north side of the road, on the west side of the creek, perhaps thirty feet from the creek, and about a rod from the road. He was sitting there with his arm on his knee and his hand up to his head; he seemed to be hurt; he asked me to help him; he said "help;" that she stopped; he said the bull had hooked him. At this time the bull, having broken from his fastening by breaking out the end of the wooden swivel, was standing in the water of the small creek, thirty or forty rods from where he was lying when she went up. Witness states that deceased at that time did not have his hat on; that just before or just after the buggy in which her son and hired man conveyed the deceased to his home

started, her husband went and picked up deceased's hat—a common straw hat—which was found within the circle that the bull had eaten off while tied; she thinks not more than three feet from the place where the bull was lying when she went up; she thinks a little further from the center than where he was lying.

Spencer Morely, a witness for defendant in error, testified that he was working for plaintiff in error at the time of the accident; was in the field near by; knew where the bull was tied; that he was tied so he could come within four rods of the bridge; was about a rod from the road. On cross-examination witness said that in his opinion the bull was lariated so that he could not get nearer than a rod to the road, but that he could get nearer to the road than to the water in the small creek.

This is all the testimony which can possibly shed the least light upon the enquiry as to how the injury was received. Counsel for plaintiff in error lay considerable stress upon the circumstance of the finding of the hat of deceased a few feet from the path, and within the circle fed off by the bull while he was tied; and upon that they build up the theory that the deceased must have left the road, gone close to the bull, and while there received the injury by being struck, by the bull making one sudden and quick jump, and there lost his hat.

Whatever weight this evidence and theory was entitled to in the minds of the jury, it is presumed they gave it, as it was their duty to do under the instructions of the court. If, as is substantially claimed by the plaintiff in error, the instruction assumes that there was no sufficient evidence of the deceased having left the road, we think that such assumption is justified by the evidence.

The fourth and only remaining point urged by plaintiff in error is that the third and fifth instructions prayed by him should have been given. Said instructions were in the following words:

" 3.   It is not negligence nor want of ordinary care for a person to keep a vicious bull upon his own premises at a place remote from where other persons have a right to go."

" 5.   If you find from the evidence that the defendant, Solon I. Glidden, had notified Wm. B. Moore, the deceased, prior to the receiving of the injuries complained of to keep off from his land, and not cross the same, and that the deceased, in violation of this notification, did go upon said land, at or near where the bull was, and in consequence thereof was attacked by said bull, and received the injuries complained of, then, in that case, plaintiff can not recover."

The third instruction was properly refused, as it does not state the law correctly, nor is it applicable to the evidence in the case.   It is negligence and want of ordinary care for a person to keep a vicious bull or other dangerous animal insecurely fastened, upon his own premises at a place where other persons are known to go, whether they have a right to go there or not.   1 Thompson on Negligence, 222, and cases there cited.

The same is true of the fifth instruction.   If the plaintiff in error allowed the general public to use a road, though not laid out as a highway, across his land, and it was so used by the public for a long time, and the plaintiff in error insecurely tethered the said bull near the said road, knowing him to be vicious and dangerous, and the said bull broke his fastening and set upon and killed the deceased while passing along the said road, it would make no difference as to the liability of the owner of said animal that he had forbidden the deceased to use the said road.   See authority above cited.   Also Id., p. 300, et seq.

We therefore reach the conclusion that there is no error in the record, and that the judgment of the district court must be affirmed.

JUDGMENT AFFIRMED.