ANDERSON, Administratrix, Respondent, v. ANDERSON,

Appellant.

(168 N. W. 852).

(File No. 4269.    Opinion filed Sept. 3, 1918.    Rehearing denied November 4, 1918).

1. **Negligence—Recovery, for Death by Vicious Bull—Owner's Knowledge of Dangerous Propensities, Rule Re Liability.**

    One keeping a bull or other animal known to be of vicious tendencies is liable for such injury as may be caused by it, regardless of degree of care exercised by the owner in restraining

and controlling it, or of precautions taken by him to prevent it doing injury; but this rule is subject to the qualification, that if injured party is guilty of negligence contributing directly to the injury, such negligence would be a defense.

2. **Same—Death by Vicious Bull—"Dangerous Animal," Defendant's Knowledge Of—Evidence; Sufficiency—Liability.**

Where, in a suit for damages resulting from death of plaintiff's accident, caused by defendant's vicious bull, the evidence clearly showed that the animal was a "dangerous animal" prior to and at time of the injury, and that defendant was charged with knowledge of the animal's vicious tendencies, if he did not have actual knowledge thereof, held, that these facts established defendant's liability for the injury.

3. **Same—Death by Vicious Bull—Decedent's Knowledge of Disposition—Evidence, Sufficiency.**

In a suit for damages resulting from decedent's death caused by injury by being gored by defendant's bull, the evidence showing that decedent was and had been defendant's farm-hand at intervals during time defendant had owned the bull from calfhood, and had assisted in caring for the bull, having the same opportunity as defendant to learn its characteristics; the bull having shown signs of bad temper and vicious disposition for some months prior to the injury—a subject of conversation in decedent's presence, he being cautioned to be on his guard, to which he paid little attention,—that decedent sometimes lead the bull from its barn stall to water; that another farm-hand had become afraid of it and carried water to it rather than lead it to water; held, that the evidence showed that decedent had equal opportunity with defendant to know of the dangerous disposition of the bull, and in fact did know thereof.

4. **Same—Death from Vicious Bull—Decedent's Contributory Negligence, Proximate Cause—Evidence, Question for Jury.**

In a suit for damages resulting from death of decedent caused by being gored by defendant's vicious bull, the evidence showing that decedent farm-hand had frequently led the bull to water at a trough near the barn, but that for some time before the injury another farm-hand had become afraid of it and caried water to it rather than try to lead it to water, that the bull was fastered in a barn stall by means of a rope and a leather strap, the rope being tied to the manger and one end of the strap being buckled to a ring in the bull's nose, which fastenings were sufficient to hold him; that on the evening of the injury decedent and another employee were doing chores in the barn, when the bull commenced to bellow and charge about, it taking no notice of feed placed before it; that the co-employee, discovering the strap unfastened from the bull's nose,

called to decedent, who went to rear of stall, picked up the "bull stick" and, though cautioned by the other to be careful, that the bull was only tied with the halter hope, decedent went into an adjoining stall only partialy separated from the bull, placed the stick in the manger, then turned to go back when the bull suddenly broke the halter rope and charged upon him, knocking him down and so trampling upon him as to cause his death; evidence tending to prove that decedent, a few moments prior thereto had led the bull to and from water; defendant claiming that in so doing he had unfastened the strap from the bull's nose and had neglected to refasten same, which deliquency had been the proximate cause of the injury; held, that the question of negligence was one for the jury under proper instructions.

5. **Appeals—Review—Instructions Not In Printed Record, Presumption Re Submission of Contributory Negligence Issue.**

Where the instructions given by trial court are not in printed record, Supreme Court will presume that questions of decedent's negligence was submitted to jury; and, jury having found against appellant, on facts, such finding is final; since jury may, and in order to reach the verdict must have found, that decedent, claimed by appellant to have been guilty of contributory negligence when defendant's bull killed him, had a right to assume that the rope with which the bull was fastened was strong enough to hold him, or they may have found that it was appellant's duty to have provided a stronger rope.

6. **Negligence—Death from Vicious Bull—Entry of Stall of Maddened Bull, Re Contributory Negligence—Question for Jury.**

In a suit for damages resulting from death of decedent caused by defendant's vicious bull, held, that, as to whether in view of the bull's temper displayed at time of injury, the danger was so obvious that decedent was guilty of contributory negligence in going into the stall, this might be true had decedent gone within the length of the halter rope, but whether he was negligent in assuming that the rope would hold the bull and that he was safe so long as he kept beyond the length of the rope, was a question for jury.

7. **Negligence—Damages for Death by Vicious Bull—Watering Bull by Decedent—Special Interrogatories to Jury, Presumption Re Instructions Concerning.**

Trial court, in a suit for damages from death of decedent caused by defendant's vicious bull, refused to submit to jury interrogatories as to whether decedent took the bull to and from water on evening of accident, and whether it was securely fastened to the stall manger by rope and strap to its nose. Held, the instruction not being in appeal record, Supreme Court will presume that all material questions were properly submitted

to jury in instructions given; and error will not be predicated upon refusal to submit special findings.

Whiting, P. J., and Gates, J., dissenting.

Appeal from Circuit Court, Spink County. Hon. Alva E. Taylor, Judge.

Action by Else Anderson, as administratrix of the estate of Ludwig C. W. Anderson, against S. C. Anderson, to recover damages for death caused by defendant's vicious bull. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Sterling & Clark,* for Appellant.

*Hanten, Hanten & Gault,* for Respondent.

(1) To point one of the opinion, Appellant cited:

Vol. 3 Corpus Juris, Pages 89, 108; Bricoe vs. Alfrey, 30 L. R. A. 607; 1 Ruling Case Law, 1089; Williams vs. Moray, (Ind.) 39 Am. Rep. 76; Meredith vs. Reed 26 Ind. 334; 29 Cyc. 511, and cases Cited.

Respondent cited:

2 Cyc. 368, and cases cited; 26 Cyc. 1113; The Congress and Empire Spring Co. v. Edgar, 99 U. S., 645, 25 L. Ed., 487, and note; Corpus Juris, Vol. 3, pages 89-90-91, and cases cited.

(2) To point two, Appellants cited:

3 Corpus Juris, page 89; Congress Spring Co. vs. Edgar, 99 U. S. 695.

(3) To point three, Appellants cited:

Erihart vs. Youngblood, 27 Pa. 331.

Respondent cited:

Sherman & Redfield on Negligence, 5th Ed. Vol. 2, Sec. 630-631-632; Sec. 2452, Civil Code, 1903.

(4) To point four, Appellants cited:

29 Cyc. 515, 525 and cases cited.

Respondent cited:

Corpus Juris, Vol. 3, page 108, and cases cited.

(7) To point seven, Appellants cited:

Cheatham vs. Wilber, 1 Dak., 321; 46 N. W., 580; Krumm vs. S. D. C. Ry. Co. (S. D.) 127 N. W. 655.

POLLEY, J.    Plaintiff is the surviving widow of Ludwig Anderson, deceased, and is administratrix of his estate. Decedent was killed by a bull owned by defendant, and this action is

brought to recover damages occasioned by the death of said decedent.

Plaintiff states her cause of action in two separate counts. In the first, she alleges that the bull was vicious and known to be vicious by defendant, without alleging any negligence on the part of defendant other than the keeping of the bull after defendant had knowledge of his vicious and dangerous tendencies. In the second count, plaintiff alleges that defendant, as owner of the said bull, "failed and neglected to provide and maintain a good, proper, and sufficient stall * * * to control and safely keep said bull, and otherwise failed to take proper precautions to prevent said bull from doing injury," and that, as a result of said negligence, said bull was permitted to attack and kill the decedent.

The defendant, in his answer, admitted the ownership of the bull, but denied any negligence on his part, and denied that he had knowledge that said bull was vicious or dangerous or that said bull in fact was vicious, and alleged that said bull was quiet and tractable, and that he could be safely handled and managed, and that he had never shown any dangerous or vicious tendencies. He further alleged that he had provided all necessary, proper, and convenient means whereby said bull could be safely handled, managed, and controlled, and, by way of affirmative defense, defendant aleges that any injury that had been caused to said decedent by the said bull was the result of carelessness and negligence on the part of said decedent. The case was tried to a jury. Verdict and judgment were for plaintiff, and defendant appeals.

[1] It is the theory of the plaintiff, as stated in the first count of her complaint, that a person keeping a bull or other animal known to be of vicious tendencies is liable for such injuries as may be caused by such animal, regardless of the degree of care exercised by such owner in restraining and controlling such animal or the precautions taken by the owner of such animal to prevent its doing injury. We believe this contention is supported by reason and by the weight of authority. The rule is stated in Congress & Empire Spring Co. v. Edgar, 99 U. S. 659, 25 L. Ed. 487, as follows:

"Whoever keeps an animal accustomed to attack or injure mankind, with the knowledge of its dangerous propensities, says Addison, is prima facie liable to an action for damages at the

suit of any person attacked or injured by the animal, without proof of any negligence or default in the securing or taking care of the animal; the gist of the action being the keeping of the animal after knowledge of its mischievous disposition." 3 C. J. 88.

[2] But this rule is subject to the following qualification: If the injured party is guilty of negligence that contributed directly to the injury, such negligence would be a defense to the action. Glidden v. Moore, 14 Neb. 84, 15 N. W. 326, 45 Am. Rep: 98. That the bull in question in this case had developed a vicious disposition and was in fact a "dangerous animal" prior to and at the time of the injury is clearly shown by the evidence. The evidence is sufficient also to charge the defendant with knowledge of the vicious tendencies of the bull, if indeed he did not have actual knowledge of such fact. These facts unqualified are sufficient to establish defendant's liability for the injury. But it is contended by the appellant that the decedent had equal opportunity with defendant to know of the dangerous disposition of the bull, and in fact did know of such dangerous disposition, and that the injury was brought about by the negligence and want of ordinary care on the part of the decedent. A determination of these questions requires an examination of the circumstances existing at the time of the injury.

[3] The bull was something over three years old at the time of the injury and had been owned by the defendant and kept on defendant's farm since he was a calf. The decedent was a farm hand, and had worked on said farm at intervals all of the time that defendant had owned the bull. During the times that decedent had worked on said farm, he had assisted in doing the chores, including the care of the bull. He appears to have had the same opportunity as had the defendant to learn the characteristics of the bull. The bull had shown signs of a bad temper and a vicious disposition for some months prior to the injury. This matter had been the subject of conversation in decedent's presence, and he was cautioned to be on his guard against the bull. Decedent appears to have attached little significance to this warning, and said he was on good terms with the bull and that he was not afraid of him.

[4] The bull was kept in a stall in defendant's barn, and either the defendant or one of the hired hands generally led him

out to water at a watering trough some 75 or 100 feet from the barn; but for some time before the injury to decedent one of the farm hands, who was a witness at the trial, had become afraid of the bull, and when he did the chores he carried water to the bull rather than to try to lead the bull to the water. The bull was fastened in a stall in defendant's barn by means of a rope and a leather strap. The rope was tied to the manger, and one end of the strap was buckled to a ring in the bull's nose, and the other end of the strap was tied to the manger. These fastenings seem to have been sufficient to hold him; or, at least, there is no evidence showing that he ever broke loose or attempted to break lose when he was tied with both the rope and strap. As an appliance of safety in leading the bull, defendant had provided what is known as a "bull stick" which, when not in use, was kept in the rear of the stall. On the evening of the injury, the decedent and one Johnson (another employee on defendant's farm and who was a witness at the trial) were doing chores in the barn, when the bull commenced to bellow and to charge about in the stall. After he had kept up this disturbance some little time, the witness Johnson went into the feed alley and put some feed in the manger. The bull took no notice of the feed, but continued bellowing and charging about in the stall. At that time the witness discovered that the strap was not fastened in the ring in the bull's nose. Witness then called to decedent, who went to the rear of the stall from another part of the barn. He picked up the bull stick and started into an adjoining stall. As he did this, the witness said to decedent, "Be careful, you know he is only tied with the halter rope," but decedent went on into the stall and placed the stick in the manger and then turned as if to go back out of the stall. The parition between this stall and the bull's stall, with the exception of one board, which was some four or five feet high, had been torn out, and, just as dceedent turned, the bull, by a sudden jerk, broke the halter rope and charged the decedent. He knocked decedent down and tramped upon him in such manner as to cause his death.

There is evidence tending to prove that the decedent, only a few minutes prior to the injury, had led the bull out to water and returned him to his stall in the barn. Appellant contends that, in so doing, he had unfastened the strap from the ring in the bull's

nose, and that, when he returned the bull to the stall, decedent had neglected to refasten the strap to the said ring, and that it was because this strap had not been fastened to said ring that the bull was able to break loose and attack the decedent as he did. In other words, that the neglect on the part of the decedent to refasten this strap to the ring in the bull's nose was the proximate cause of the injury.

[5] Under these circumstances, was the decedent guilty of such negligence in going into the stall where he was injured as should preclude him if living, and his personal representatives after his death, from recovering for such injury. In view of all these facts and circumstances, we believe that the question of negligence was one to be determined by the jury under proper instructions by the trial court. The instructions given by the court are not set out in the printed record. Therefore we must presume that the question of decedent's negligence was submitted to the jury by the trial court, and, the jury having found against the appellant on the facts, such finding is final. The jury may have found, and in order to reach the conclusion they did reach must have found, that the decedent had a right to assume that the rope with which the bull was fastened was strong enough to hold him; or they may have found that it was the duty of the appellant to have provided a rope strong enough to hold him.

[6] It is contended by appellant that, in view of the temper displayed by the bull at the time of the injury, the danger was so obvious that the decedent was guilty of contributory negligence in going into the stall where the injury occurred. This might be true had the decedent gone within the length of the halter rope with which the bull was tied, but whether he was negligent in assuming that the rope would hold the bull, and that decedent was safe so long as he kept beyond the length of said rope, was a question of fact to be determined by the jury, and which question we must assume was properly submitted to the jury by the instructions of the court.

[7] Appellant requested the trial court to submit the following interrogatories to the jury:

"(1) Did the decedent take the bull to water on the evening of the accident and take him back to the barn?

"(2) When the bull was returned to the barn on the evening

of the accident and fastened to the manger, was he securely fastened by both rope and strap to the nose?"

The court refused the request, and such refusal is assigned as error. Whether a trial court should or should not, in all cases, when so requested, submit special interrogatories to the jury, is not necessary to determine. The instructions that were given to the jury are not before this court, and therefore we are bound to presume that all material questions were properly submitted to the jury in the instructions that were given. In the absence of the instructions that were given by the court, error cannot be predicated upon the refusal to give a requested instruction or to submit a special finding to the jury.

The other assignments have been examined, but we find no prejudicial error.

The judgment and order appealed from are affirmed.

WHITING, P. J. (dissenting). Under the undisputed evidence, the deceased was as fully advised of the dangerous propensities of the bull as was the defendant. The undisputed facts show gross negligence on the part of deceased in going into the stall by the side of this bull at a time when the bull was apparently thoroughly aroused and when deceased was advised that he was not secured by the nose ring. Such negligence being undisputed, there was nothing to go to the jury, and it was error for the court to refuse to direct a verdict for defendant.

GATES, J., concurs in the dissent.