# CHARLESTON.

VAUGHAN v. MILLER BROS. "101" RANCH WILD WEST SHOW

(No. 6630)

Submitted May 6, 1930.   Decided May 13, 1930.

*John Copenhaver* and *Jo. N. Kenna,* for plaintiff in error.
*Philip H. Hill,* for defendant in error.

HATCHER, JUDGE:

Certain property of the appellee was attached.   The affidavit for the order of attachment was quashed.   This writ of error involves the sufficiency of the affidavit.

The nature of the claim as alleged in the affidavit is as follows: "Heretofore, to-wit, on the 10th day of September, 1928, the said Marvin Holton Vaughan, accompanied by this affiant, attended the circus of the said Miller Brothers, '101' Ranch Wild West Show, in the City of Charleston, Kanawha County, West Virginia, and while attending said circus, the index finger of the right hand of the said Marvin Holton Vaughan was bitten off at or near the second joint by a dangerous and vicious animal, to-wit, an Ape owned by the said Miller Brothers, '101' Ranch Wild West Show, a corporation, while said animal was on exhibition in said circus, for the entertainment of the public."

The plaintiff's demand in brief is this: He attended a circus, and a vicious ape on exhibition there bit off his finger.

There is no allegation of negligence. The plaintiff takes the position that none is requisite; that the gravamen of the action is not in the negligent keeping of a vicious animal, but in keeping it at all. Much authority supports his position. See 1 Standard Ency. of Pro. 961 (3); 3 C. J. p. 112, § 358; 1 R. C. L. pp. 1086, 1087, § 29; Kinkead's Comm. on Torts, § 237; Annotation 97 Am. St. Rep. 287, 288. These as well as other American authorities are all based directly or indirectly upon English decisions. *May* v. *Burdett,* 9 Q. B. 101, 115 E. R. 1213, decided in 1846, is the leading English case. Lord Denman, in delivering the judgment of the court said: ''The precedents, both ancient and modern, with scarcely an exception, merely state the ferocity of the animal and the knowledge of the defendant without any allegation of negligence or want of care. * * * The conclusion to be drawn from an examination of all the authorities appears to us to be this: That a person keeping a mischievous animal with knowledge of its propensities is bound to keep it secure at his peril, and that, if it does mischief, negligence is presumed, without express averment.'' Troubled because his position could not be reconciled with the maxim so deeply ingrained in English jurisprudence, ''He who suffers a damage by his own fault, is not considered as suffering damage,'' Lord Denman stated that, if the injury was occasioned solely by the willfulness of the plaintiff, it might be a defense; but on this he did not commit himself. Bramwell, J., in *Nichols* v. *Marsland,* L. R. 10 Ex. 255, attempting to bolster Lord Denman's position, said: ''I am by no means sure that if a man kept a tiger, and lightning broke his chain, and he got loose and did mischief, that the man who kept him would not be liable.'' In his enthusiasm, Judge Bramwell overlooked the probable mollifying effect of the lightning on the tiger as well as another maxim, ''An act of God does injury to no one.''

Based on the pronouncement in *May* v. *Burdett,* judicial dicta followed that the owner of animals feræ naturæ ''is an insurer for,'' ''is liable under all circumstances for,'' and ''is absolutely liable for'' all injuries done by them.

The common law accorded to the owner of wild animals (in possession) practically the same property rights therein as in

those domesticated. 3 Minor, Inst. p. 7. The keeping of a menagerie was not forbidden or deemed in any way blameworthy. Holmes, The Common Law, p. 155. See, also, article by Thomas Bevan, 22 H. L. R. pp. 465, 476. If, at common law, the ownership of wild animals was recognized and protected as lawful, how could judges consistently presume such ownership wrongful and negligent? An anomaly indeed! It is true that animals feræ naturæ constantly seek to escape confinement, and, if successful, become a menace to mankind. But the tiger, unrestrained, is no more dangerous than fire, water, electricity, or gas uncontrolled. The liability of the owner of these has never been declared absolute, nor his negligence presumed from mere ownership. Why discriminate against the owner of the animate menace? Barrows, in his work on Negligence, says that this discrimination ''is not supported by reason or analogy.'' See section 150. It is certainly not consistent with the fundamental principles underlying actions for torts. Before the law can redress an injury, ''there must be an act which under the circumstances is wrongful.'' Bishop on Non-Contract Law, § 22. For if the injury ''is the result of a lawful act done in a lawful manner, without any carelessness or negligence, there may be no legal injury, and no tort giving rise to an action for damages.'' Addison on Torts *19.

Despite the fallacy of *May* v. *Burdett*, the English courts have continued to render it lip service. Not a single adjudication, however, have I found against an owner, based solely on possession, in which arose the question of vis major or contributory negligence. And in *Marlor* v. *Ball*, 16 R. L. R. 239, Eng. Rep. Ann. for the year 1900, p. 2585, it was held that the defendant who had zebras on exhibition was without negligence and not liable for the resultant injury to plaintiff, who had stroked a zebra. So by an English court do we find the English doctrine of absolute liability absolutely ignored.

Immediately following the decision in *May* v. *Burdett,* it became quite the vogue in the United States to proclaim (by way of dictum) its doctrine. But the principle of absolute liability has no more been enforced here than in England. The Supreme Court of Massachusetts, which in *Popplewell* v. *Pierce,* 10 Cush. 509, 511 (decided in 1852), had lent an attentive ear to *May* v.

*Burdett,* in the later case of *Bottcher* v. *Buck,* 163 N. E. 182, limited the risk of exhibitors of wild animals to "keeping them so as not to injure invitees who are in exercise of due care." In 1914 the Supreme Court of Connecticut in *Bischoff* v. *Cheney,* 89 Conn. 1, 4, 92 A. 660, 661, disclaimed the expressions in the earlier case of *Woolf* v. *Chalker,* 31 Conn. 121, 130, 81 Am. Dec. 175, which sanctioned the "harsh doctrine" that the owner of a vicious animal was an insurer against damages done by it, holding: "With us negligence is the foundation of an action of this character." Absolute liability on the part of the keeper of a ferocious animal was advocated theoretically in 1862 by the New York court in *Scribner* v. *Kelley,* 38 Barb. 14. But in 1878 that theory was discarded in the case of one who with knowledge of an animal's ferocity unnecessarily assumed a position of danger. "In such a case it cannot be said, in a legal sense, that the keeping of the animal, which is the gravamen of the offense, produced the injury." *Muller* v. *McKesson,* 73 N. Y. 195, 201, 29 Am. Rep. 123. A return to the earlier position by the Appellate Division in *Molloy* v. *Starin,* 113 App. Div. 852, 99 N. Y. S. 603, was reversed in the Court of Appeals in 191 N. Y. 21, 83 N. E. 588, 16 L. R. A. (N. S.) 445, 14 Ann. Cas. 57. The later case of *Guzzi* v. *N. Y. Zoological Society,* 192 App. Div. 263, 182 N. Y. S. 257, 260, decided in 1920, indicates a permanent rupture with *May* v. *Burdett,* saying: "The cases seem to be unanimous that no recovery can be had where the injured party unnecessarily and voluntarily puts herself in the way to be hurt, knowing the probable consequences of her act." The federal court, in *Congress & E. Spring Co.* v. *Edgar,* 99 U. S. 645, 651, 25 L. Ed. 487, approved the rule of pleading advocated in the English case, but did not subscribe to the principle of absolute liability going only so far as to indicate that the exhibitor of a wild animal "is or may be liable for injuries inflicted by it on a party who is not guilty of negligence, and is otherwise without fault." Thus the shadow would be preserved without the substance. The Supreme Court of New Jersey never countenanced *May* v. *Burdett,* but disapproved it in *Marshall* v. *Welwood,* 38 N. J. Law, 339, 20 Am. Rep. 394, and *De Gray* v. *Murray,* 69 N. J. Law, 458, 55 A. 237.

174

In this country the right to exhibit wild animals is judicially recognized. "The conducting of shows for the exhibition of wild * * * animals is a lawful business." *Bostock-Ferari Amusement Co.* v. *Brocksmith,* 34 Ind. App. 566, 73 N. E. 281, 282, 107 Am. St. Rep. 260. Such exhibitions are licensed everywhere. Municipalities frequently maintain zoos for the benefit of the public. The idea is no longer indulged that it is prima facie negligent to keep or exhibit wild animals. Cooley on Torts (3d Ed.) 706, 707. "Plainly the doctrine is otherwise now," says Bishop, supra, § 1230. Hence the gist of modern actions against exhibitors cannot be the mere keeping of savage animals, but must be neglect to restrain them. *Hayes* v. *Smith,* 62 Ohio St. 161, 182, 56 N. E. 879; *Fake* v. *Addicks,* 45 Minn. 37, 47 N. W. 450, 22 Am. St. Rep. 716; F. Pollock, 25 Law T. Rev. 317. "Latterly, however, there seems to be a disposition upon the part of the authorities to hold the more reasonable rule, that all that should be required of the keeper of such animals is that he should take that superior caution to prevent their doing mischief which their propensities in that direction justly demand of him." 1 Thompson, Comm. Neg. § 841.

Hence, if a right of action in such case depends on neglect to restrain, negligence must be alleged. For failure of such allegation, the affidavit for attachment was properly quashed.

The ruling of the circuit court is affirmed.

*Affirmed.*