# Richmond

## Panorama Resort v. John C. Nichols.

November 14, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Browning and Eggleston, JJ.

The opinion states the case.

*Clyde T. Bowers* and *Shackelford & Robertson,* for the plaintiff in error.

*J. Lynn Lucas, Wm. F. Moffett* and *Harrison & Harrison,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

John C. Nichols (hereinafter referred to as the plaintiff) brought an action of trespass on the case against J. Allen Williams and others, partners trading as Panorama Resort (hereinafter referred to as the defendants), to recover damages for personal injuries sustained when the plaintiff was attacked and injured by a bear kept on the premises of the defendants.

The gist of the plaintiff's allegation is: That the defendants ran and operated a public hotel and resort, known as Panorama Resort, on the Sky Line Drive in Page county; that they negligently owned and kept on their premises three bears known to them to be wild, dangerous and vicious animals; that they negligently allowed and encouraged their guests and the general public to feed soft drinks, etc., to the bears without warning said guests of the dangerous and vicious nature of the animals; that they negligently failed to keep the bears properly enclosed so that they might not injure said guests; that the defendants although knowing the nature and tendencies of the animals, negligently failed to post any sign or notice at or near the enclosure wherein the bears were

confined, warning their said guests of the dangerous and vicious nature of the animals; and that while he, the plaintiff, as a guest and invitee of the defendants, was standing near the enclosure preparing to feed the bears, one of the animals attacked him and severely scratched and tore his face.

The defendants filed a plea of not guilty and a special plea of contributory negligence. In the latter they alleged that at the time of the plaintiff's injuries he was intoxicated, was in the act of teasing one of the bears, and had negligently placed his body and face too close to the enclosure.

The evidence on behalf of the plaintiff shows that the three bears were confined in a pen, about 100 feet long, forty feet wide, six or seven feet high, constructed of two layers of poultry wire with a heavier hog wire on the exterior. The enclosure was not otherwise reinforced and was loose and sprung in places. There was no guard rail surrounding it. The gate leading into the enclosure did not fit tightly and in it, about three and one-half feet from the ground, was a hole approximately six or eight inches in diameter.

On the rear of the enclosure was a pasteboard sign about twelve by sixteen inches, on which there was printed in large letters: "NOTICE: DO NOT STAND CLOSE TO THE BEARS." However, this sign was not visible to the plaintiff as he approached the enclosure from the place where he had parked his car.

The plaintiff with two other young men arrived at the Panorama Resort about six o'clock p. m. While one of his companions was buying soft drinks for the bears the plaintiff was standing with his back near the gate of the enclosure. Suddenly one of the bears sprung on the fence, pushed his paw through the wire enclosure and tore the plaintiff's face, painfully and seriously injuring him.

The evidence on behalf of the defendants shows that the bears had been purchased about two years before the accident when they were small cubs, had been raised by

the defendants, were tame and friendly, and had never before shown any disposition to attack any one. It was admitted that defendant's guests were encouraged to buy soft drinks, ice cream, etc., for the animals.

A witness for the defendants testified that the plaintiff had admitted that the accident was due to the fact that "he was half shot and got too close to the bear pen," or "fell up against the bear fence."

The plaintiff denied having made this statement. While he and his companions admitted that they had been drinking about three hours prior to the accident, they denied that they were intoxicated, that the plaintiff fell against the enclosure, or that they were teasing or irritating the bears at the time of the attack.

The trial court submitted the case to the jury on the theory that it was not necessary for the plaintiff to prove that the defendants were guilty of any negligence in the manner or in the place of keeping the bears; that, being the keepers of such wild animals, the defendants were the absolute insurers of the safety of the plaintiff, as their invitee, from attack; and that the contributory negligence or misconduct of the plaintiff, even if proven, would not prevent his recovery.

Taking the case under these principles the jury found a verdict for the plaintiff in the sum of $800 on which the court entered final judgment.

The action of the lower court in submitting the case to the jury on the above theory, both by granting the plaintiff's instructions over the objection of the defendants and by refusing the defendants' instructions, is assigned as error.

The question of the liability of a keeper of wild animals for injuries inflicted thereby is one of first impression here although it has frequently been before other courts.

There is considerable direct authority and much dicta supporting the doctrine (applied by the lower court) of the absolute liability of a keeper of wild animals for injuries inflicted by them. Under this doctrine the gist

of the action is the mere keeping of the animals and not the manner in which they are confined, since the keeper is presumed to know their ferocious and dangerous propensities. For cases supporting this view, see 1 Ruling Case Law, page 1086, section 29, and notes; 3 Corpus Juris, page 87, section 315; 52 L. R. A. (N. S.) 377, note; 69 A. L. R. 500, note; 1 Thompson on Negligence, page 776, section 841.

The rule of absolute liability owes its origin largely to the English case of *May* v. *Burdett,* 9 Q. B. 101, 115 Eng. Reprint, 1213, 3 Eng. Rul. Cas. 108, decided in 1846. It was followed in *Congress & E. Spring Co.* v. *Edgar* (1878), 99 U. S. 645, 25 L. Ed. 487; *Muller* v. *McKesson* (1878), 73 N. Y. 195, 29 Am. Rep. 123; *Popplewell* v. *Pierce* (1852), 10 Cush. (Mass.) 509, and in other early cases. It is cited and followed in *Candler* v. *Smith* (1935), 50 Ga. App. 667, 179 S. E. 395, 398. Its principles were likewise recently applied (with mondifications) in *Stevens* v. *Hulse* (1934), 263 N. Y. 421, 189 N. E. 478, 479.

Under the principle of absolute liability as strictly applied, contributory negligence, in the ordinary sense, is no defense. But the keeper of the wild animal is allowed to escape liability where the evidence shows that the act of the injured person, in exposing himself to the danger of an attack, was the proximate cause of his injury. 1 Ruling Case Law, page 1088, section 31; 3 Corpus Juris, page 87, section 315; 69 A. L. R., page 513, note.

The doctrine of absolute liability has not been free from attack. In Cooley on Torts (3d Ed.), page 706, that distinguished author says: "The keeping of wild animals for many purposes has come to be recognized as proper and useful; they are exhibited through the country with the public license and approval; governments and municipal corporations expend large sums in obtaining and providing for them; and the idea of legal wrong in keeping and exhibiting them is never indulged. It seems, therefore, safe to say that the liability of the owner or keeper for any injury done by them to the person or property of

others must rest on the doctrine of negligence. A very high degree of care is demanded of those who have them in charge; but if, notwithstanding such care, they are enabled to commit mischief, the case should be referred to the category of accidental injuries, for which a civil action will not lie."

In 1 Thompson on Negligence, page 776, section 841, the above is quoted with approval, and it is said: "Latterly, however, there seems to be a disposition upon the part of the authorities to hold the more reasonable rule, that all that should be required of the keeper of such animals is, that he should take that superior caution to prevent their doing mischief which their propensities in that direction justly demand of him."

In 69 A.L.R., page 500, there is a note, published in 1930, dealing with and collecting the cases on this subject. The annotator there says (69 A. L. R., page 500): "* * * the trend of the authorities appears to be away from the rule, or to limit or qualify it." And, further, (69 A. L. R., page 517): "* * * it would seem that the rule itself, which rested originally on uncertain authority and never had seemingly sufficient reasonable grounds for its support, should be repudiated and the basis of the liability of the owner or keeper of a wild animal for injuries inflicted by it should be negligence in the manner or place of keeping the animal, as in the case of actions for personal injuries generally."

In *Vaughan* v. *Miller Bros. "101" Ranch Wild West Show* (1930), 109 W. Va. 170, 153 S. E. 289, 69 A. L. R. 497, the West Virginia Supreme Court of Appeals, in a unanimous opinion delivered through Judge Hatcher, flatly repudiated the doctrine of absolute liability. In that case the plaintiff alleged that his finger was bitten off by a vicious ape on exhibition at a circus which he, the plaintiff, was attending. There was no allegation of negligence of the keeper, the plaintiff relying on the doctrine of absolute liability.

Judge Hatcher points out the fallacy in the argument

that the mere keeping of a wild animal is negligence *per se* as originally laid down in *May* v. *Burdett, supra,* and followed by the American courts. As he says (109 W. Va. 170, 153 S. E. 289, 290, 69 A. L. R., page 499) : "In this country the right to exhibit wild animals is judicially recognized. * * * Such exhibitions are licensed everywhere. Municipalities frequently maintain zoos for the benefit of the public. The idea is no longer indulged that it is *prima facie* negligent to keep or exhibit wild animals." And continuing (109 W. Va. 170, 153 S. E. 289, 69 A. L. R., page 498) : "The tiger, unrestrained, is no more dangerous than fire, water, electricity, or gas uncontrolled. The liability of the owner of these has never been declared absolute, nor his negligence presumed from mere ownership. Why discriminate against the owner of the animate menace? Barrows, in his work on Negligence, says that this discrimination 'is not supported by reason or analogy.' See section 150. It is certainly not consistent with the fundamental principles underlying actions for torts. Before the law can redress an injury, 'there must be an act which under the circumstances is wrongful.' Bishop on Non-Contract Law, section 22. For if the injury 'is the result of a lawful act done in a lawful manner, without any carelessness or negligence, there may be no legal injury, and no tort giving rise to an action for damages.' Addison on Torts *19."

After pointing out the tendency of the modern decisions to depart from the doctrine of absolute liability, Judge Hatcher concludes (109 W. Va. 170, 153 S. E. 289, 290, 69 A. L. R., page 500) : "Hence the gist of modern actions against exhibitors cannot be the mere keeping of savage animals, but must be neglect to restrain them."

In *Lehnhard* v. *Robertson's Adm'x* (1917), 176 Ky. 322, 195 S. W. 441, the court refused to apply the doctrine of absolute liability, holding that whether the keeper of a bear had been negligent in the manner in which it had been restrained, and whether the plaintiff was guilty of contributory negligence were questions for the jury.

Likewise in *Bottcher* v. *Buck* (1928), 265 Mass. 4, 163 N. E. 182, it was held to be a jury question whether a bear had been properly confined, and whether a custodian of a child was guilty of negligence in allowing the latter to get too close to the animal.

In *DeGray* v. *Murray* (1903), 69 N. J. Law 458, 55 Atl. 237, 238, and in *Bischoff* v. *Cheney* (1914), 89 Conn. 1, 92 Atl. 660, 661, the harsh rule of *May* v. *Burdett, supra,* is expressly disapproved. See also, *Fake* v. *Addicks* (1890), 45 Minn. 37, 47 N. W. 450, 22 Am. St. Rep. 716.

An examination of the more recent decisions will show that even in those jurisdictions where the doctrine of absolute liability still obtains, it has been modified to the extent that contributory negligence is now available as a defense. For instance, in *Stevens* v. *Hulse* (1934), 263 N. Y. 421, 189 N. E. 478, while the court adhered to its former holding that a keeper of wild animals must see at his peril that they do not harm others, it applied a modification of the doctrine of absolute liability by saying that the question of the contributory negligence of the plaintiff and the sufficiency of the warning contained in a notice were questions for the jury.

To the same effect, see *City of Tonkawa* v. *Danielson* (1933), 166 Okl. 241, 27 Pac. (2d) 348; *Opelt* v. *Al. G. Barnes Co.* (1919), 41 Cal. App. 776, 183 Pac. 241.

■ We agree with the reasoning of Judge Hatcher and the other authorities which decline to follow and apply the harsh doctrine of absolute liability to the keeper of wild animals. The liability, we think, should rest on negligence. But such keeper should exercise a very high degree of care in the manner and place of keeping such animals. We hold also that the principle of contributory negligence should apply as in actions for personal injuries generally. Cooley on Torts (3d Ed.), page 706; 1 Thompson on Negligence, page 776, section 841; *Parker* v. *Cushman* (C. C. A. 8), 195 Fed. 715, 718.

■■ In the case before us, both the defendants and the plaintiff, being adults in the possession of their normal

faculties, were equally charged with knowledge of the vicious nature and propensities of a wild animal, such as a bear, even though tamed, or partly so, and should have governed themselves accordingly, the defendants by exercising a very high degree of care to see that the animal was confined and restrained so as not to injure others, and the plaintiff by using his common sense (that is, by exercising ordinary care) to see that he placed himself in a position of obvious safety. Whether the respective parties here have exercised the care required of them is a question to be determined by the jury.

In view of the fact that the case must be remanded for a new trial in accordance with the principles herein laid down, it will not be necessary for us to review in detail the instructions granted and refused.

The judgment of the lower court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*