HEIDEMANN, Respondent, v. WHEATON, et al., Appellants

(34 N. W.2d 492.)

(File No. 8930. Opinion filed November 16, 1948.)

**John C. Farrar,** of Rapid City, for Defendants and Appellants.

**Bottum & Bottum,** of Rapid City, for Plaintiff and Respondent.

HAYES, J. On a Sunday afternoon plaintiff, Mrs. Heidemann, went to see two black bears in a cage. While viewing the bears she placed herself within such proximity to the cage and bears that her chosen position proved to be dangerous and harmful. One of the bears reached through the bars of the cage and struck her down. She sued for the injuries suffered, and a jury awarded a substantial recovery. The appeal of defendants from the ensuing judgment and rulings of the trial court brings before us a number of intriguing problems. We turn first, however, to the contention of appellants that the trial court erred in refusing to grant the motion of their counsel for a directed verdict favorable to both of the Wheatons. We believe that such motion was properly put and should have been granted. The same called to the attention of the court the specific question respecting the legal effect of respondent's conduct, the answer thereto to us clearly appearing as a preclusion against recovery for the bear's misbehavior.

Additional facts deemed essential to this opinion may be briefly stated. The cage in which the bears were confined rested upon land owned by Mrs. Wheaton. It was constructed of materials altogether sufficient to keep the animals within the caged area. The bears were cubs each weighing about 100 pounds and could stand to a head height of about 5 feet. They were of the black bear species. Measurements of one of the bears include an inside fore-leg length of 19 inches. The bear which struck Mrs Heidemann

assumed a standing position and faced her at or near the bars of the cage just prior to the time when it inflicted the injuries for which recovery was allowed. Views differed regarding the possible reach of a bear beyond or outside of the cage bars, but it is certain that a bear did reach out and strike respondent. Accordingly, we must accept it as a fact that the victim of the bear's attack voluntarily placed herself within the danger zone and assumed the risk of being injured. The record allows no other factual deduction regarding respondent's action.

■ Respondent argues that it was for the jury to decide whether her actions or conduct had been such as to constitute contributory negligence. She relies upon the decision in Anderson v. Anderson, 41 S. D. 32, 168 N. W. 852, 853, and facts of the instant case which she asserts could lead reasonable men and women to differ regarding the question of propriety or impropriety on her part as she visited the bears. However, the briefs of counsel reflect an accord with respect to the law applying to those who visit caged animals known to be wild by nature and dangerous. Authorities directed to our attention sustain the rule tersely set forth in Restatement of The Law, Torts, Vol. III, § 515 (2). It is there stated that a plaintiff is barred from recovery by intentionally and unreasonably subjecting himself to the risk that a wild animal will do harm to his person. See also Restatement, Torts, Vol. II, § 484.

In support of her contention respondent asserts as follows: "The fact that the plaintiff misjudged the situation cannot constitute evidence that she 'intentionally or unreasonably' put herself within reach of the bear, as a matter of law." Nothing in the record before us suggests that respondent did other than to voluntarily and intentionally move into and remain within an area which then was, and ultimately proved to be, wholly unsafe. Whether this action of respondent was an unreasonable subjecting of herself to the risk that the bear would do her bodily harm is a question not at all likely, as we see it, to provoke differing views in the minds of reasonable men and women. Minds of such persons could not hold it to be reasonable to move or stand

within striking range of a caged animal commonly known to be responsive to vicious propensities. On the contrary, reasonable minds must agree that it is a violation of duty to one's self and not reasonable to take a chance with a black bear. When respondent voluntarily or carelessly stepped within reach of the bear she may have misjudged the situation as contended by her counsel. In any event, her judgment was erroneous. For such error in judgment and the injuries resulting directly therefrom respondent cannot impose legal responsibility upon the owner of the animal.

In the Anderson case, supra, a divided opinion of this court announced the application of the rule of absolute liability to the owner of a bull known to be vicious. The majority of the judges held that a person keeping a bull or other animal known to be of vicious tendencies is liable for such injuries as may be caused by such animal, regardless of the degree of care exercised by such owner in restraining and controlling such animal or the precautions taken by the owner of such animal to prevent its doing injury, and stated the qualification of such holding as follows: "If the injured party is guilty of negligence that contributed directly to the injury, such negligence would be a defense to the action." A careful reading of the opinion discloses that although it declares the rule of absolute liability to be supported by the weight of authority, the evidence tending to establish negligence on the part of the owner of the bull and contributory negligence on the part of decedent in handling the animal is reviewed and treated at length. Finally decided by said opinion was that it was for the jury to say whether decedent had been negligent in attempting to handle the bull unless it then had a ring in its nose by which its actions might have been controlled.

We think that the opinion of the court in Panorama Resort v. Nichols, 165 Va. 289, 182 S. E. 235, sets forth the views now to be regarded as deserving of our support. The thorough review therein of decisions and authorities bearing upon the question and the reasoning employed appear to us wholly sufficient to affirm the soundness of the conclusions

announced in said opinion. But the facts of that case differ substantially from those in the one before us. The defendants in the Virginia case were operating a public resort and made it a practice to encourage guests to buy soft drinks, ice cream, etc., for the animals. The enclosure in which the bears were confined was constructed of wire and was loose and sprung in places. Thus the owners of the bears held forth to the public a condition of affairs which most naturally produced a justification on the part of guests of the premises for the belief that it was at least reasonably safe to stand close enough to the cage to hand food and drinks to the animals. The hole in the loose gate was without doubt the place through which soft drinks were handed to the bears or else the animals reached through the hole and took from the hands of guests items they had been invited to obtain at the resort and take to the animals.

In the case before us the Wheatons were not operating a resort. A plan previously considered by them to publicly display the bears and other attractions had been abandoned. The statements of counsel exclude from this case conduct on the part of the Wheatons tending to establish that they were attempting to operate a private zoo when Mrs. Heidemann was injured or that there was then an invitation to her or to the public to enter upon the premises and look at the bears. The Wheatons had put out a calendar for 1946 advertising a zoo but no zoo had been placed in operation as contemplated. It does not appear from counsels' statements of facts that Mrs. Heidemann had ever seen one of these calendars or had been informed thereof. The plain inference from such statements is that she knew nothing about the calendars but went to see the bears solely at the suggestion of a friend. We have then but a case where the injured party approached and stood near a cage constructed of steel bars, about six inches apart, through which the animals could readily strike out. But casual observation of the cage and bears would suggest an exercise of caution rather than carelessness in approaching the animals. We cannot adjust our thinking to the view that members of a jury, with due regard for the plain facts of the case, could

fairly disagree in deciding the question whether or not Mrs. Heidemann had unreasonably exposed herself to a risk readily apparent to her. The proximate cause of the injury she suffered was her failure to exercise ordinary care in avoiding an obvious danger.

The judgment appealed from is reversed with directions to enter judgment in favor of the defendants.

All the Judges concur except ROBERTS, P. J., not sitting.