PETROPLUS, JUDGE:
The cases of Flossie Grace Pudder, Claim No. D-485, and Robert J. Pudder, her husband, Claim No. D-487, against the Department of Natural Resources of the State of West Virginia, respondent, were consolidated by agreement of counsel and were tried as one case.
The claimants seek damages in the amount of $100,000.00 for personal injuries, hospital and medical expenses and loss of consortium. The facts can be briefly stated as follows: On or about the 7th day of July, 1970, claimant, Flossie Grace Pudder, her husband Robert J. Pudder, and her three children visited the French Creek Game Farm Zoo located in Upshur County, West Virginia, which is owned and operated as a public recreational facility by the Department of Natural Resources of the State of West Virginia. The public is encouraged to attend, visit and enjoy the facility. On the aforesaid date, the claimant, her husband and family were standing on an embankment adjacent to a lot enclosed by a steel link fence wherein a bison was kept in captivity for exhibition to the public. Claimant apparently was leaning on or quite close to the fence when her attention was distracted by her sister, and as she turned away from the fence, without any provocation the bison charged into the fence, striking the claimant, who was thrown down the bank, sustaining a comminuted fracture of the left proximal tibia and was otherwise injured. She suffered con *169 siderable pain of body and mind, and incurred medical expenses and hospitalization in the approximate amount of $2,000.00. It is also quite probable that she may have a permanent injury to her leg. There were no signs warning the public of the dangerous propensity of the bison, or barriers provided commensurate with the danger to be apprehended, although it appears that the fence was quite adequate to restrain the animal. The fence was not broken or damaged by the buffalo’s charge, although it did have sufficient flexibility on impact to throw a person off balance who might be standing adjacent to the fence. Her husband’s claim is based on the same facts, and his damages are the medical expenses incurred for hospitalization of his wife, loss of services and consortium. The respondent, in its answer, admitted that it owned and operated the French Creek Game Farm as a public attraction, but denied any negligence on the part of its agents and employees; and, even if negligence is assumed, respondent raises the defense of assumption of risk and contributory negligence.
At the hearing of this case, the unusual aspects were fully detailed, and it appeared that respondent had no knowledge of the dangerous or vicious propensities of this particular buffalo.
Before a finding can be made in favor of the claimants, it is the considered opinion of this Court that the claimants must establish negligence or lack of ordinary care on the part of the respondent or the caretaker of the Farm which proximately contributed to and caused the injuries to the claimants. It was granted and assumed by both parties that a buffalo is a wild animal, unpredictable in its nature and possibly dangerous to persons who may be in proximity to the animal. We do not find from the evidence any basis for considering Mrs. Pudder to have engaged in any misconduct or contributory negligence, and, therefore, find the defenses of assumption of risk and contributory negligence to be untenable. There also is no basis for finding that she brought the injury on herself by provoking the animal or disregarding any warnings given to her.
When the claimant left her automobile and ascended the bank to look at the buffalo in the enclosure, we find that she did so by invitation of the respondent. We also feel that the respondent had a duty not to expose spectators who were invited on the premises to attacks by animals which by nature and tendency resent and *170 resist confinement. We do not find from the evidence that there was any negligence on the part of the respondent in failing to properly restrain the animal or keep it securely within the enclosure. The fence did not break or give way under the charge, and in all respects appears to be adequate to confine the animal. We do find, however, that the respondent had a duty to give proper warning to the spectators to maintain a safe distance from a fence which had a degree of resiliency, or to take other measures to keep spectators at a safe distance away from the fence to protect them from any attacks from such an animal. This was not a domesticated animal where the owner may rely on its previous conduct or tame propensity. In the latter case, knowledge of vicious and mischievous propensities must be shown. As a bison is not the type of particular animal that can be tamed to some degree, it is known to be fierce or dangerous as an animal ferae naturae, and sudden and unexpected movements should be anticipated.
The early common law concept of liability of an owner or keeper of a wild animal was that of absolute liability for any injuries inflicted by such animal, regardless of negligence on the part of the owner, or contributory negligence on the part of the person injured. The early decisions have been substantially modified by the courts and according to the weight of authority, negligence is now the basis of liability. Where wild animals are kept for the education or entertainment of the public, recovery cannot be had unless negligence can be established. Our West Virginia Supreme Court of Appeals has adopted the modern view in the case of Vaughn v. Miller Bros. “101” Ranch Wild West Show, 109 W. Va. 170, 153 S.E. 289, 69 ALR 497.
It is the finding of this Court that under the circumstances of this case proper precautions were not taken by the respondent to assure the safety of spectators attracted to the buffalo enclosure. The State was remiss in permitting and attracting the public to the fence line of an enclosure confining a wild animal that weighed approximately a ton, known to be dangerous and unpredictable. We also find that the failure of the State to use proper care for the protection of the invitees to the park was the proximate cause of the claimant’s injuries, and are, therefore, of the opinion to make an award on her behalf. The respondent did not controvert the seriousness or the extent of the claimant’s injuries, and we must *171 assume that they have been fairly presented to the Court by the medical reports filed as exhibits.
For the reasons assigned, we recommend an award of $8,000.00 to Flossie Grace Pudder for the injuries sustained, and an award of $3,000.00 to her husband, Robert J. Pudder, for medical expenses and loss of services and consortium.
Claim allowed in the amount of $11,000.00.